WM. H. McGEE & CO., INC. and Baloise Insurance Company of America, Appellants,

v.

J.H. SCHICK d/b/a The Schick Drilling Company, Appellee.

No. 11–88–087–CV.

Court of Appeals of Texas, Eastland.

May 31, 1990.

Rehearing Denied Aug. 2, 1990.

Randy A. Nelson, Richard M. Mosher, Thompson, Coe, Cousins & Irons, Dallas, for appellants.

Brian E. Cutbirth, Joe L. Cope, McDonald & Cutbirth, Abilene, J. Donald Bowen, John Tavormina, Helm, Pletcher, Hogan, Bowen & Saunders, Kevin H. Dubose, Perdue & Todesco, Houston, for appellee.

## OPINION

McCLOUD, Chief Justice.

J.H. Schick d/b/a The Schick Drilling Company sued his insurer, Baloise Insurance Company of America, and the insurer's agent, Wm. H. McGee & Co., Inc., for unfair claims settlement practices. Judgment was rendered in favor of Schick against McGee and Baloise, jointly and severally, for actual damages of $320,000.00 plus $128,000.00 in attorney's fees and prejudgment interest of $44,268.88. Pursuant to TEX.INS. CODE ANN. art. 21.21, § 16(b)(1) (Vernon Supp.1990), the trial court awarded Schick $728,537.76, "two times the amount of actual damages," against each defendant severally. The trial court further ordered that Baloise, the insurer, pay Schick an additional $16,800.00 as a penalty as provided for in TEX.INS. CODE ANN. art. 3.62 (Vernon 1981) because of the insurer's delay in paying the loss. Schick concedes that his losses are not covered by Article 3.62, and he agrees that the judgment should be reformed to eliminate the $16,800.00 penalty award.

Schick insured his drilling rig for $140,000.00 with Baloise through McGee. A blowout occurred on June 25, 1986, while Schick was drilling a well. The blowout lasted for approximately 22 hours. During this time, the drilling rig was exposed to large quantities of hydrogen sulfide gas. McGee, who acted as a managing general agent for a pool of insurance companies including Baloise, employed Permian Claim Service to investigate the claim. Permian Claim Service assigned the claim to its employee, Sherman Lee Smith. Schick told Smith that he wanted a metallurgist to inspect the rig because he was concerned about possible structural failure that could result in personal injuries if the rig was unsafe. Smith employed certain engineers to inspect the rig, but he did not seek the opinion of a metallurgist. Schick employed Dr. Edward Cox, a metallurgical engineer, to examine metal samples cut from various parts of the rig. Dr. Cox testified extensively as to the effect of the hydrogen sulfide gas on the rig. He concluded that, because of the blowout and the intense exposure to the hydrogen sulfide gas, the drilling rig was not safe to operate and could not be economically refurbished. The defendants produced engineers at trial who disagreed with Dr. Cox' opinion.

Mitchell Mannes, regional claims manager for McGee, testified that McGee was the managing general agent for Baloise. Mannes supervised the Schick claim. Mannes admitted at trial that Schick's rig was damaged as a result of the blowout. He testified that they had received an estimate dated September 2, 1986, from Inger-

soll Rand International that the rig could be repaired for approximately $45,000.00. On August 18, 1986, Schick's attorney sent a letter to Mannes which included Schick's proof of loss where he stated that the rig's cash value before the blowout was $140,000.00 and that it had "$0" value immediately following the blowout. The attorney instructed Mannes that neither Mannes nor his agents should contact Schick directly and that all contact regarding the claim should be made through the attorney. There is no evidence that either McGee or Baloise ever offered Schick any amount of money in settlement of Schick's claim.

We reverse and render in part and reform and affirm in part.

Dr. Cox testified that his laboratory examinations revealed that the exposure of the rig to hydrogen sulfide gas caused "rapid corrosion attacks" to occur to the rig. He described some of the welds as having a "scaly type of corrosion, a very rapid, extreme, yet fast, corrosion attack on the surface." He found "ringworm corrosion" which "goes in and excavates into the material, chews out great big chunks of it, just like a crane digging down into the ground." He stated that the ringworm corrosion was caused by a "rapid corrosion attack" which in his opinion resulted from the blowout.

■ In the first point of error, McGee and Baloise urge that the trial court erred by not submitting a tendered instruction to the jury. The statement of facts shows that, during the charge conference, Schick objected to an instruction contained in the "proposed charge." Following a discussion, the trial court deleted the following instruction:

> You are instructed in connection with the foregoing Special Issue that you shall not consider loss or damage to the property caused by or resulting from corrosion, rust, dampness of the atmosphere, extremes of temperature, or expansion or contraction caused by changes in the temperature.

The insurance policy in question contained the following exclusion:

> (C) Loss or damage to the property insured caused by or resulting from *wear and tear, inherent vice, gradual deteri-*

*oration,* corrosion, rust, dampness of the atmosphere, extremes of temperature, or expansion or contraction caused by changes in temperature. (Emphasis added)

Schick argues that, by omitting from the instruction the words "wear and tear, inherent vice, gradual deterioration," the instruction in the "proposed charge" did not accurately reflect the context of the exclusion. We agree. The policy was an "all risks" policy and expressly included a "blowout." The instruction, therefore, was not a "substantially correct" instruction. TEX.R.CIV.P. 278. We note that while testifying by deposition, Mannes agreed that they had no corrosion defense because the corrosion exclusion in the policy referred to damages as a "result of wear and tear, gradual deterioration beyond any external cause."

Furthermore, the instruction contained in the proposed charge related only to the breach of contract questions which asked the jury to find the value of the rig before and after the blowout. The judgment was not based upon these questions. The judgment was based upon the jury's actual damage finding. The instruction was not tendered or requested as to these questions.

Also, TEX.R.CIV.P. 273 provides that a request for instructions shall be made separate and apart from a party's objections to the court's charge. *Templeton v. Unigard Security Insurance Company,* 550 S.W.2d 267 (Tex.1976); *Breithaupt v. Navarro County,* 675 S.W.2d 335 (Tex.App.—Waco 1984, writ ref'd n.r.e.). The record fails to show that McGee and Baloise submitted their request in writing separate and apart from their objections to the court's charge. Defendants' first point of error is overruled.

*Article 21.21 § 16(b) Statutory Damages (Two Times the Amount of Actual Damages)*

■ The jury found in Subpart A of Question No. 7 that both McGee and Baloise, individually, made or caused to be

made a "statement and/or representation which was untrue, deceptive or misleading."[1] In Subpart B of Question No. 7, the jury determined that the defendants had engaged in "unfair and/or deceptive acts or practices in the handling of Plaintiff's claim."[2] In Question No. 8 which included the statutory definition of "knowingly" found in TEX.INS. CODE ANN. art. 21.21, § 2(c) (Vernon Supp.1990), the jury found that each defendant knowingly engaged in the conduct found in Questions Nos. 7A and 7B. Article 21.21, § 16(b)(1) provides that, if the trier of fact finds that the defendant "knowingly" committed the acts complained of, "the court shall award, in addition, two times the amount of actual damages." The trial court's award of $728,537.76 against each defendant severally is based upon the jury's answers to Questions Nos. 7A, 7B, and 8.

In Points of Error Nos. 4 and 5, McGee and Baloise contend that the findings by the jury to Questions Nos. 7A and 7B do not constitute ultimate questions of fact and are immaterial. We agree.

Schick relies upon TEX.INS. CODE ANN. art. 21.21 (Vernon 1981 & Supp.1990) as applied and discussed by our Supreme Court in *Vail v. Texas Farm Bureau Mutual Insurance Company*, 754 S.W.2d 129 (Tex.1988). In *Vail*, the Court observed that Section 16(a) of Article 21.21 permits recovery by any person who has been injured by another's engaging in:

(1) any of the practices declared to be unfair or deceptive by Section 4 of Article 21.21;

(2) conduct defined in rules or regulations lawfully adopted by the Board of Insurance under Article 21.21 as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance; or

(3) any practice defined as an unlawful deceptive trade practice by Section 17.46 of the Texas Deceptive Trade Practices Act [DTPA], TEX.BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987).

The bases of recovery relied upon by Schick are:

(1) Article 21.21, § 4(2) of the Insurance Code;

(2) Board Order No. 18663, § 4(a) with the TEX.INS. CODE ANN. art. 21.21–2, § 2(d) (Vernon 1981) definition and § 4(b) with the definitions found in *Arnold v. National County Mutual Fire Insurance Company*, 725 S.W.2d 165 (Tex. 1987), and *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex. 1988);

(3) Section 17.46, DTPA.

■ The jury's answer to Question No. 7B is immaterial and will not support the judgment against the defendants. A finding that the defendants engaged in "unfair and/or deceptive acts or practices in the handling of Plaintiff's claim" is not a finding that the defendants engaged in any of the practices declared to be unfair or deceptive by Article 21.21, § 4(2). It is not a finding that the defendants engaged in conduct "defined" in rules or regulations lawfully adopted by the Board of Insurance under Article 21.21 as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. Sections 4(a) and 4(b) of State Board of Insurance Order 18663 (now 28 TEX.ADMIN. CODE § 21.3) which were discussed in *Vail* are also not applicable to Question No. 7B. Finally, as Question No. 7B is worded, the jury could have found that the defendants engaged merely in "unfair" acts or practices. Such finding would not be a finding that the defendants engaged in any practice defined as an unlawful deceptive trade practice by Section 17.46 of the DTPA. Unlawful deceptive trade practices under Section 17.46 are "[f]alse, misleading, or deceptive acts or practices" not "unfair" acts or practices. See *Spencer v. Eagle Star Insurance Company of America*, 780 S.W.2d 837 (Tex.App.—Austin 1989, writ pending).

---

**1.** The jury found in favor of McGee and Baloise in Subparts C, D, E, F, H, and I of Question No. 7, which asked the jury to determine if the defendants had made certain specific statements or representations.

**2.** The jury found in favor of McGee and Baloise in Subparts G and H of Question No. 7, which asked the jury to determine if the defendants had engaged in certain specific acts.

**518**

■ In Question No. 7A, the jury answered "yes" as to whether McGee and Baloise "made or caused to be made any statement and/or representation which was untrue, deceptive or misleading." To support his position that the jury's finding to Question No. 7A is an ultimate finding of fact, Schick relies upon Article 21.21, § 4(2) of the Insurance Code which provides:

> False Information and Advertising Generally. *Making*, publishing, disseminating, circulating or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, *or in any other way*, an advertisement, announcement or statement containing any assertion, *representation or statement with respect to the business of insurance* or with respect to any person in the conduct of his insurance business, *which is untrue, deceptive or misleading.* (Emphasis added)

Schick further argues that the finding is an "unlisted" deceptive trade practice under Section 17.46(a) of the DTPA and, thus, prohibited by Article 21.21, § 16 of the Insurance Code. In discussing an unlisted act or practice under Section 17.46(a), the Court in *Spradling v. Williams*, 566 S.W.2d 561 (Tex.1978), approved the following definition of a false, misleading, or deceptive act:

> You are instructed that the term "false, misleading, or deceptive acts or practices" means an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous.

The Court added:

> One must, in the instance of an unlisted act or practice, therefore, obtain a finding not only (1) that the act or practice

occurred, but (2) that it was a deceptive trade practice.

■ Notwithstanding TEX.R.CIV.P. 277 regarding the submission "whenever feasible" of "broad-form" questions, when the controverted issue is whether particular statements or representations which violate Section 17.46(a) of the DTPA or Article 21.21, § 4(2) of the Insurance Code were in fact made, the finder of fact should be required to find that a statement or representation was made which on its face shows that it has "the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous." In the instant case, the jury was merely required to find that "any statement and/or representation was made." To hold otherwise would effectively render redundant all of the defined statements or representations which are expressly prohibited by Article 21.21, § 16. A plaintiff would never request jury questions regarding specific statements or representations if, to support a theory of recovery, it is only necessary to obtain a jury finding that "any statement and/or representation was made." [3]

■ The Court in *Vail* observed that Section 16 of Article 21.21 of the Insurance Code prohibits unlawful deceptive trade practices defined by Section 17.46 of the DTPA. The Court included the "unlisted" acts or practices in 17.46(a) as well as the "specific" acts enumerated in Section 17.-46(b). We suggest that "unlisted" acts or practices under Section 17.46(a) are not prohibited under Section 16 of Article 21.21.

According to WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 476–7 (unabridged 2nd ed. 1983) "define" means:

1. to determine or describe the limits of; to determine or set down the precise outlines of.
2. to determine and state the limits and nature of; to describe exactly.

While Texas courts have usually referred to the practices condemned in Section 17.46 of the DTPA as either "listed" or "unlist-

---

**3.** We again point out that all of the Subparts of Question No. 7 regarding specific statements or

representations were answered against Schick.

ed," this does not mean that it would be improper to refer to the acts as either "defined" or "undefined." In *Spradling v. Williams*, supra, the Court said, "Subsection (b) then contains a list of *specific acts or practices* which the law *identifies* as false, misleading or deceptive." (Emphasis added) We think that the "specific acts or practices" which the law "identifies" in Section 17.46(b) are the "defined" practices referred to in Article 21.21, § 16(a) of the Insurance Code. Those "listed" (defined) acts or practices in Section 17.46(b) are "described exactly," and the "limits and nature" of the acts or practices are "set down" precisely. An "unlisted" (undefined) act or practice under Section 17.46(a) is not "described exactly," and the "limits and nature" of the acts or practices are not "set down" precisely.

We are aware that in *Vail* the Court stated that a finding that the insurer failed to exercise good faith in the handling of the plaintiffs' claim constituted a finding of an "unlisted" deceptive trade practice under the DTPA and would support an award under Article 21.21, sec. 16 of the Insurance Code.[4] We point out, however, that the issue in *Vail* was the adequacy of the plaintiffs' pleadings. More importantly, the concept which we suggest, that the "defined" acts and practices are only the 24 "listed" acts and practices found in Section 17.46(b) of the DTPA, was not addressed in *Vail*.

We hold, therefore, that the jury's answers to Questions Nos. 7A and 7B do not constitute ultimate findings of fact. If, however, we are in error and the jury's answer to Question No. 7A does constitute an ultimate finding of fact, we hold for the reasons discussed below, that there is no evidence that either McGee or Baloise, individually, made any "statement and/or representation which was untrue, deceptive or misleading."

■ In Points of Error Nos. 9 and 11, McGee and Baloise urge that there is no evidence that either defendant made any statements or representations which were untrue, deceptive, or misleading. We agree.

In considering defendants' no evidence points, we will consider only the evidence supporting the findings and disregard all evidence to the contrary. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ To support the jury's finding, Schick points us to several policy provisions[5] and to several statements[6] made by Smith, an employee of the independent adjusting firm employed to investigate the plaintiff's claim. We hold that, as a matter of law, the policy provisions relied upon by Schick do not constitute representations which were "untrue, deceptive or misleading."

The charge contains an extensive instruction on the liabilities of an insurance company for the acts of its "general agent." The jury determined in Question No. 6 that McGee was the "general agent" of Baloise. The jury was not asked, and there are no jury findings, as to which, if any, of the statements were in fact made by Smith. There is also no finding that Smith was the agent, acting within his actual or apparent authority, for either McGee or Baloise when he made the statements.

We point out that in *Royal Globe Insurance Company v. Bar Consultants*, 577 S.W.2d 688 (Tex.1979), the trial court found that the misrepresentations were made by the insurer's agent. The Supreme Court said:

---

4. Since 1979, a "consumer" under the DTPA may only bring a suit urging "a false, misleading, or deceptive act or practice" that is "specifically enumerated in a subdivision of Subsection (b) of Section 17.46." See Section 17.50(a)(1) of the DTPA.

5. Schick directs us to provisions such as: the policy covers "all risks"; the policy shows the rig was insured for $140,000.00; and the policy covered damages for blowout.

6. Schick directs us to statements made by Smith, such as: "I am going to take care of you. Don't worry about it"; "[W]e will get things finished and taken care of so you can get back to work"; "Don't worry about it. You will be hearing from us in a few days, and we will take care of it"; and "[W]e didn't need an attorney to take care of this problem." These statements were controverted by Smith.

Embrey as a local recording agent for Royal Globe, had statutory authority under Article 21.02 and Article 21.14(2) to sell insurance policies for the company and by necessary implication to represent the coverage afforded by such policies to the consumer.

The Court held that the lack of actual authority was not a defense if the agent was acting within the apparent scope of his authority.

In the instant case, we assume, as we must under a "no evidence" standard of review, that all of the statements relied upon by Schick were in fact made and that Smith's statements were "untrue, deceptive or misleading." However, there is no finding that any statements were made by an agent of either defendant. There is no finding that Smith had either actual or apparent authority to make any statements. Unlike the "recording agent" in *Royal Globe Insurance Company v. Bar Consultants*, supra, our record does not establish that Smith was clothed with "apparent authority" to make the statements relied upon by Schick.

We, therefore, hold that there is no evidence that either McGee or Baloise "made or caused to be made any statement and/or representation which was untrue, deceptive or misleading."

Having held that the jury's answers to Questions Nos. 7A and 7B are not findings of ultimate findings of fact, the findings are immaterial and will not support plaintiff's theory of recovery. We have also held that there is no evidence that either McGee or Baloise made any statements or representations which were untrue, deceptive, or misleading as found by the jury in Question No. 7A. We, therefore, reverse and render that portion of the trial court's judgment wherein the trial court awarded the plaintiff $728,537.76 (two times the actual damages) against each defendant individually and severally.

### Actual Damages

■ The trial court instructed the jury:

You are instructed that a breach of good faith and fair dealing occurs when there is no reasonable basis for the denial of a claim or delay in payment or a failure on the part of the Defendant to determine whether there is any reasonable basis for the denial or the delay.

The jury found in Question No. 12 that both McGee and Baloise breached their duty of good faith and fair dealing to Schick. The trial court awarded Schick actual damages of $320,000.00 against McGee and Baloise, jointly and severally.

In Points of Error Nos. 4 and 5, McGee and Baloise also argue that the jury's answer to Question No. 12 does not constitute an ultimate finding of fact and is immaterial. We disagree. The finding is, according to *Vail*, an ultimate finding under the following theories of recovery:

(1) Common law breach of good faith and fair dealing;

(2) An unlisted deceptive act or practice under Section 17.46(a) of the DTPA; and

(3) Section 4(b) of Board Order 18663 with the definitions in *Arnold* and *Aranda*.

Article 21.21-2, § 2(d) defines as an unfair practice:

Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear.

The jury's finding to Question No. 12 does not meet the specific requirements of Article 21.21-2, § 2(d). Therefore, Section 4(a) of Board Order No. 18663 with the Article 21.21-2, § 2(d) definition relied upon by Schick as one of his bases for recovery under the Insurance Code is not applicable.

■ Although the jury found under Question No. 12 that the defendants had engaged in conduct prohibited by Section 16 of Article 21.21 of the Insurance Code, the jury did not find that these acts were "knowingly" committed. Article 21.21, § 16(b)(1) requires that the conduct be "knowingly" in order for the trial court to award in addition "two times" the amount of actual damages. The jury did find in Questions Nos. 15 and 17 that McGee and Baloise breached their duty of good faith and fair dealing "intentionally or with

gross negligence." Under the questions asked, the jury could have found that the breach occurred solely because of "gross negligence." The jury's answers to Questions Nos. 15 and 17 do not constitute findings that the acts were "knowingly" committed as required by Article 21.21, § 16(b)(1). Questions Nos. 15 and 17 were obviously elements of Schick's claim for common law exemplary damages which the jury found in Questions Nos. 16 and 18.

 In Point of Error No. 13, McGee asserts that, as an agent as opposed to an insurer, it did not owe a duty of good faith and fair dealing as a matter of law. We disagree based upon the particular facts of this case.

The Court in *Arnold v. National County Mutual Fire Insurance Company*, supra, recognized that a duty of good faith and fair dealing may arise as a "result of a special relationship between the parties governed or created by a contract." The Court, which was concerned with an insurer, explained its reasoning as follows:

> In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. In addition, without such a cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed. An insurance company has exclusive control over the evaluation, processing and denial of claims.

The binding agreement shows "McGee" as the company "in Which Coverage is Bound." The policy is written on a "Wm. H. McGee & Co., Inc." form. The form designated McGee as "Marine Underwriters" and also as "Managers." The policy has four different insurance companies listed as possible insurers. The policy number and "Company Code" shows that plaintiff's policy is issued by Baloise. The policy states that, in the event of loss or damage, the insured should notify the "Agent who issued" the policy or "Wm. H. McGee &

Co., Inc." McGee's underwriter determined to cancel the policy, and a notice of cancellation signed by "Wm. H. McGee & Co., Inc., General Agents/Manager" was sent to plaintiff by McGee.

McGee, as managing general agent, issued policies on behalf of Baloise, collected premiums, and paid claims. Mannes, McGee's regional claims manager, testified that McGee acted "more or less as an insurance company." We hold that because of the "special relationship" between McGee and Schick which was "governed or created" by the insurance contract, McGee owed Schick a duty of good faith and fair dealing. The Supreme Court in *Viles v. Security National Insurance Company*, 33 Tex.Sup.Ct.J. 412 (April 18, 1990), stated that the duty of good faith recognized in *Arnold* "emanates not from the terms of the insurance contract, but from an obligation imposed in law 'as a result of a *special relationship* between the parties governed or created by a contract.'" (Emphasis in original) The Court indicated that a breach of the duty of good faith and fair dealing may occur even if there has been no proof of a breach of the insurance contract.

 The defendants assert in Points of Error Nos. 14 and 15 that there is no evidence or, alternatively, insufficient evidence to support the jury's finding that they breached their duty of good faith and fair dealing. We disagree.

In reviewing defendants' no evidence points, we will consider only the evidence supporting the finding and disregard all contrary evidence. *In re King's Estate*, supra. We will review and consider all the evidence in passing upon defendants' factually insufficient arguments. *Pool v. Ford Motor Company*, 715 S.W.2d 629 (Tex. 1986).

Mannes, who was in charge of adjusting Schick's claim, testified that there was no question that damage occurred to the rig; that there was no question that the damage was covered under the policy; and that no policy provision excluded damages resulting from the blowout. Mannes stated in

his deposition that he did not feel that they had a "corrosion" defense since the corrosion was an "ensuing loss as a result of the blowout." He added, "The exclusion for rust and corrosion is really for damages as a result of wear and tear, gradual deterioration beyond any external cause."

McGee knew as early as September 2, 1986, that Schick had suffered at least $45,000.00 in damages (excluding the engines and drill pipe) but made no offer to pay Schick. This estimate included only costs for cleaning, sandblasting, and painting the rig. It did not include any costs for damage to the metal structure.

Schick was concerned about the integrity of the metal and requested that a metallurgist be employed to inspect the rig. No metallurgist was ever employed by defendants to inspect the rig. Smith, the claims adjuster, recommended to McGee that a metallurgist be employed. The record shows that defendants at no time made any offer to pay Schick for his damages.

■ There is evidence that defendants knew that Schick was damaged and that the damage was covered under the policy. The fact that Schick employed an attorney and that a lawsuit was filed on October 13, 1986, did not relieve defendants of their obligation to act in good faith and to deal fairly with Schick in the settlement of his claim. Defendants' no evidence points of error are overruled. After considering all the evidence, we hold that the evidence is factually sufficient to support the jury's findings that both McGee and Baloise breached their duty of good faith and fair dealing to Schick.

The jury found in Question No. 14 actual damages of $320,000.00 for the breach of good faith and fair dealing. This finding is not challenged. Defendants' attack upon Question No. 10, which also concerned damages, is not a challenge to Question No. 14. Defendants do not challenge the jury's finding of $128,000.00 attorney's fees. The trial court entered judgment for $320,000.00 actual damages plus $128,000.00 attorney's fees plus $44,268.88 prejudgment interest.

We have held that the jury's answer to Question No. 12 is a finding of an ultimate issue of fact. The jury's finding that both defendants breached their duty of good faith and fair dealing "intentionally or with gross negligence" is not a finding that the acts were "knowingly" committed as required by Article 21.21, § 16(b)(1) for the plaintiff to be entitled to "two times the amount of actual damages." The evidence is both legally and factually sufficient to support the jury's finding that each defendant breached its duty of good faith and fair dealing. Under the particular facts of the case, McGee owes a duty to Schick to act in good faith and deal fairly with the investigation and settlement of Schick's claim, even though it is not the "insurer." The jury found in Question No. 14 actual damages of $320,000.00. This question is not challenged by the defendants.

### Exemplary Damages

■ In Question No. 15, the jury found that McGee breached its duty of good faith and fair dealing intentionally or with gross negligence. The jury determined in Question No. 16 that Schick should be awarded $125,000.00 as "exemplary damages" against McGee. In Question No. 17, the jury found that Baloise breached its duty of good faith and fair dealing intentionally or with gross negligence. The jury determined in Question No. 18 that Schick should be awarded $125,000.00 as "exemplary damages" against Baloise. In Points of Error Nos. 18 and 19, McGee and Baloise contend that there is no evidence or, alternatively, that the evidence is factually insufficient to support the jury's answers to Questions Nos. 15 and 17 that they acted intentionally or with gross negligence. We disagree.

The record reflects that McGee, as Baloise' managing general agent, was aware that Schick was entitled to a substantial payment under the policy. Schick was concerned about the integrity of his rig and requested that a metallurgist inspect the drilling rig. The defendants employed certain engineers, not metallurgists, to inspect the rig. Schick employed a metallurgist who inspected metal cuttings from the rig.

The report of the metallurgist was furnished by plaintiff to the defendants. At no time did the defendants ever make plaintiff any offer of settlement. We hold that there is some evidence to support the jury findings that both defendants acted intentionally or with gross negligence. After considering all the evidence, we hold that the evidence is factually sufficient to support the findings to Questions Nos. 15 and 17.

We have held that the evidence is both legally and factually sufficient to support the jury finding that both McGee and Baloise intentionally or with gross negligence breached their duty of good faith and fair dealing. The amount of the award for exemplary damages, $125,000.00 against each defendant, is not challenged. We, therefore, reform the judgment to provide that Schick shall be entitled to an award of $125,000.00 against each defendant so as to give Schick "all the relief to which he may be entitled." TEX.R.CIV.P. 301; *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361 (Tex.1987).

### Other Issues

In Point of Error No. 27, the defendants urge that the trial court erred in awarding interest at the rate of ten percent per annum on the actual damages as found by the jury. They argue that, under TEX. REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987), the rate should not exceed six percent per annum on the $140,000.00 damages which represent the lost benefits under the policy. We disagree. Schick's award of actual damages was not an award for breach of contract. The award resulted from the common law tort action for breach of the duty of good faith and fair dealing. *Viles v. Security National Insurance Company*, supra.

The defendants also assert in Point of Error No. 28 that the award of exemplary damages violates TEX.CONST. art. I, § 16 because such award constitutes an ex post facto or retroactive law. In Point of Error No. 29, they urge that the award of exemplary damages violates TEX.CONST. art. I, § 19 and the Fourteenth Amendment to the United States Constitution. These issues were not raised at the trial court level and are not preserved for complaint on appeal. TEX.R.APP.P. 52(a).

### Conclusion

Question No. 12 supports a recovery by Schick against McGee and Baloise for breach of their duty of good faith and fair dealing under either of Schick's theories of recovery: the common law duty or the statutory duty in Article 21.21, § 16 of the Insurance Code. The trial court erred in awarding "two times the amount of actual damages" against each defendant severally because there is no jury finding that the defendants "knowingly" breached their duty of good faith and fair dealing. Each defendant is liable, jointly and severally, for the amount of actual damages found by the jury plus attorney's fees and prejudgment interest. The defendants are severally liable for the exemplary damages found by the jury as to each defendant. Baloise is not liable for the penalty provided for in Article 3.62 of the Insurance Code.

Therefore, the judgment of the trial court is reversed and rendered as to the award of the statutory penalty of $728,-537.76 against McGee and Baloise severally. The judgment is reformed to provide that Schick recover $125,000.00 as exemplary damages against McGee and Baloise severally. The judgment is further reformed to eliminate the $16,800.00 award against Baloise. The judgment of the trial court is affirmed as to the award of $320,-000.00 actual damages plus $44,268.88 prejudgment interest and $128,000.00 attorney's fees against McGee and Baloise, jointly and severally.

The judgment of the trial court is reversed and rendered in part and reformed and affirmed in part.

### ON MOTIONS FOR REHEARING FILED BY ALL PARTIES

The motion for rehearing filed by McGee and Baloise is overruled. In the fourth point in his motion for rehearing, Schick correctly points out this Court's "apparent oversight" in failing to affirm the trial

court's award to Schick of appellate attorney's fees. Based upon jury findings, the trial court ordered that Schick would recover the following appellate attorney's fees:

(1) $7,500 from the defendants that appeal to the court of appeals, jointly and severally;

(2) $4,500 from the defendants that apply for writ of error to the Texas Supreme Court, jointly and severally; and

(3) $4,000 from the defendants that applied for writ of error in the event the application is granted by the Texas Supreme Court, jointly and severally.

This award of attorney's fees was not challenged by McGee and Baloise. We, therefore, also affirm that portion of the trial court's judgment which awards, as set out above, to Schick appellate attorney's fees. The motion for rehearing filed by Schick is in all other respects overruled.