**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**JOHN CARLO TEXAS, INC., Appellee.**

No. C14–89–01062–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 3, 1991.

Rehearing overruled July 3, 1991.

Joervin Henderson, Ronald E. Cook, Richard Keeton, Houston, for appellant.

Patricia L. Hayden, H. Victor Thomas, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Southwestern Bell Telephone Company appeals from a judgment awarding John Carlo Texas, Inc. actual and punitive damages based on the jury's finding of tortious interference with contract. In our opinion of March 21, 1991, we reversed the trial court's judgment as to punitive damages and rendered judgment that appellee take nothing as to its punitive damage claim. As modified, we affirmed the trial court's judgment. Upon motion for rehearing, we withdraw our original opinion and substitute the following opinion.

John Carlo Texas, Inc. (John Carlo) sued the City of Houston (the City) and Southwestern Bell Telephone Company (SWB) to recover damages resulting from delays in John Carlo's performance of a contract with the City for the widening of Fountainview Drive between Westheimer Road and Highway 59. John Carlo alleged that the City breached the contract and that SWB tortiously interfered with the contract between John Carlo and the City by failing to relocate its telephone poles and cables in a timely manner. A take nothing judgment was entered as to the City, but John Carlo recovered $171,155.80 in actual damages and $500,000.00 in punitive damages from SWB.

■ In point of error one, SWB claims it owed no duty to John Carlo to relocate telecommunication facilities. In point of error two, SWB claims that its conduct was justified. In its supplemental reply filed after submission of this case, appellee argues that SWB failed to preserve these complaints for review. We agree.

Neither SWB's trial brief nor its motion for judgment n.o.v. raised the argument of "no duty" in relation to the tortious interference claim. To preserve a complaint for appellate review, a party must present to the trial court a "timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make...." Tex.R.App.P. 52. Because SWB did not present the specific ground asserted in point one, SWB waived the right to assert this complaint on appeal. We overrule point one.

■ In its trial brief, SWB raised the claim that its actions were justified as a matter of law. SWB did not specifically

raise this argument in its motion for judgment n.o.v., although it did state:

> Further, and in addition, Defendant, for the reasons set forth in Defendant's Trial Brief, as a matter of law, JCT [appellee], on the facts of the record, has failed to establish a cause of action against Defendant SWB for intentional interference with contract.

Because SWB incorporated into its motion for judgment n.o.v. the arguments raised in its trial brief, we will address the claim that its actions were justified as a matter of law.

■■■ The elements of a claim of contractual interference are: (1) a contract subject to interference, (2) willful and intentional interference, (3) the intentional interference was the proximate cause of plaintiff's damages, and (4) the plaintiff suffered actual damages. *See Champion v. Wright*, 740 S.W.2d 848, 853 (Tex.App.— San Antonio 1987, writ denied); *Unitel Corp. v. Decker*, 731 S.W.2d 636, 641 (Tex. App.—Houston [14th Dist.] 1987, no writ). One is legally justified in interfering with the contract of another "(1) if it is done in a bona fide exercise of his own rights or (2) if he has an equal or superior right in the subject matter to that of the other party." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 691 (Tex.1989). The privilege of legal justification to interfere with contractual relations is an affirmative defense upon which the defendant has the burden of proof. *Id.* at 690.

The defense of justification was not presented to the jury in a separate question. Rather, the jury answered "We do" to the following question:

### QUESTION NO. 4

Do you find from a preponderance of the evidence that Bell knowingly and intentionally failed, without justification to timely relocate its facilities in connection with the Fountainview project?

■ In considering SWB's "matter of law" challenge, we must examine the record for any evidence supporting the jury's finding, disregarding all evidence contrary to the finding. *Sterner*, 767 S.W.2d at 690. If we find no evidence supporting the jury's finding, we must examine the entire record to determine if the contrary proposition was established as a matter of law. *Id.*

SWB claims the evidence established that any interference was justified because it was done in the bona fide exercise of its own rights under its contract with the City and its statutory obligation to maintain uninterrupted service to its customers. Because the jury found that SWB's interference was without justification, we must disregard all evidence showing that the interference was justified and determine if any remaining evidence supports the jury's finding. The evidence shows that the City had passed an ordinance, ordinance number 69–639 or the "Gross Receipts Ordinance," regarding the City's ability to regulate SWB. In particular, Section 14 of this ordinance states:

> The Telephone company shall, upon the written request of the City, relocate its facilities situated within any street at no expense to the City where reasonable and necessary to accommodate street widening or improvement projects of the City.

Before entering the contract with John Carlo, the City notified SWB about the Fountainview Road project and asked SWB to advise the City when it would move the utilities in the right of way. In January 1984, the City advised SWB that appellee's project commencement date was in April 1984. Testimony indicated that Houston Lighting & Power had moved all of its lines without interfering with appellee's schedule. By June 1984, however, SWB had not relocated any of its cables on Fountainview. SWB's representative, Fred Guy, testified that he knew the failure to move the aerial cables could interfere with appellee's work.

SWB had planned to construct an underground conduit system in the Fountainview area. Because SWB estimated that construction of this conduit would not be complete until August 1984, SWB had to relocate its cables temporarily from the old poles to new poles located out of the road

construction area. Guy admitted that, at the time, he thought this interim step of moving cables to new poles was a waste of money.

Appellee's representatives testified that they contacted SWB numerous times about relocating the cables and complained that the failure to relocate the cables was interfering with appellee's efforts. Rather than moving all of the cables at once, SWB moved the cables in sections as appellee's work reached that section of the road. Appellee's expert concluded that SWB's failure to relocate the cables in a timely fashion resulted in 51 days of delay and 12 days of inefficient work on the project. We find that this is some evidence that SWB's interference was not done in the bona fide exercise of its own rights. We overrule point two.

■ In point of error three, SWB claims the trial court erred in rendering judgment for appellee because only an affirmative act, and not an omission or failure to act, can form the basis for a claim of contractual interference. In support of this proposition, SWB cites *Aramco Serv. Co. v. Redland Fabricating & Welding, Inc.*, 752 S.W.2d 184 (Tex.App.—Houston [14th Dist.] 1988), *modified*, No. C–7785, 1989 WL 62253 (Tex.1989) (not designated for publication)[1]; *Frost Nat'l Bank v. Matthews*, 713 S.W.2d 365 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), and *CF & I Steel Corp. v. Pete Sublett & Co.*, 623 S.W.2d 709 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). SWB misinterprets the holdings in these cases.

In *Aramco*, the court held that Aramco's act of accepting delivery of goods was not evidence of an intentional or willful act of contractual interference. *Aramco Serv. Co.*, 752 S.W.2d at 188. Rather than finding acceptance of goods to constitute an omission or a failure to act, the *Aramco* court found that it was not an intentional or willful act as required to establish contractual interference. *See id.* Thus, *Ar-*

*amco* does not stand for the proposition that an act, rather than an omission, is required to show interference with contract.

In *Matthews*, Frost National Bank had obtained, through foreclosure, the working interest in an oil, gas, and mineral lease. *Matthews*, 713 S.W.2d at 367. Matthews filed suit against the bank seeking a declaratory judgment that the lease had terminated. *Id.* The bank filed a cross-claim against an intervenor in the suit for tortious interference with contract. *Id.* Finding that the intervenor's purpose in intervening in the suit was to uphold the lease, rather than to terminate it, the court found no evidence that Gauntt committed an act wrongfully interfering with the lease. *Id.* at 369.

In *CF & I Steel Corp.*, the defendant was a distributor of CF & I oil field pipe. *CF & I Steel Corp.*, 623 S.W.2d at 711. Mitchell Energy Company, through its subsidiary Butler Drilling, had ordered pipe from the distributor, who in turn had ordered the pipe from CF & I. CF & I refused to deliver the pipe unless the distributor paid for the order in advance and in cash. *Id.* at 714. Mitchell would not pay the distributor for the order in advance and cancelled the order, eventually procuring this pipe through another distributor. *Id.* CF & I later brought suit against the distributor for non-payment of notes and to enforce a guaranty agreement. *Id.* at 712. The distributor filed a cross-claim asserting that CF & I had tortiously interfered with the distributor's contract with Mitchell. *Id.* at 711, 713. The court found no evidence that CF & I had directly contacted Mitchell or Butler prior to cancellation of the order or that CF & I had agreed to sell the pipe to Mitchell through a different distributor prior to Mitchell's cancellation of the order. *Id.* at 714. The court found no evidence that CF & I had originally agreed to sell the pipe to the distributor on credit. *Id.* Thus, the court held that CF & I's refusal

---

1. In an unpublished opinion, the supreme court modified this court's judgment in *Aramco* so that the judgment did not reflect reversal as to a party that had not filed an appeal. *See Redland*

*Fabricating & Welding, Inc. v. Aramco Serv. Co.*, No. C–7785, 1989 WL 62253 (Tex.1989) (not designated for publication).

to extend credit was not interference with the distributor's contract with Mitchell, and even if it were, it was done in the bona fide exercise of CF & I's own rights. *Id.* at 714–15. In dicta, the court intimates that if CF & I had originally agreed to sell pipe to the distributor on credit, the court may have held that the subsequent refusal to extend credit constituted contractual interference. *See id.*

In the instant case, SWB was obligated under the Gross Receipts Ordinance to relocate cables to accommodate street widening projects. Although SWB did eventually relocate all cables, appellee alleged that SWB's untimely relocation of the cable caused delays in appellee's schedule, resulting in damages. Because no case law holds that an omission or, as in the instant case, a failure to act in a timely manner, cannot constitute contractual interference, we find no error here. We overrule point of error three.

In point of error four, SWB claims the trial court erred in submitting jury question 4 because it failed to state the elements required to support a finding of tortious interference with contract. In particular, SWB contends that this issue: (1) failed to present the controlling issue; (2) failed to instruct the jury that an act, rather than an omission is required to find tortious interference with contract; (3) failed to instruct the jury that intent to cause harm is a necessary element of tortious interference with contract; and (4) erroneously included the undefined phrase "without justification."

■ SWB first claims that the issue failed to present the controlling issue of whether SWB interfered with appellee's contract with the City. Jury question 4 asked the jury whether SWB "knowingly and intentionally failed, without justification to timely relocate its facilities in connection with the Fountainview Project." SWB claims that this question assumes that failure to relocate facilities timely constitutes interference with contract. In the preliminary statement of its brief, SWB admits that appellee's only allegation against SWB was that SWB interfered

with appellee's construction contract by intentionally failing to relocate the telephone cables in a timely manner. Thus, whether SWB intentionally failed to relocate the cables in a timely manner was the critical issue in determining whether SWB interfered with John Carlo's performance of its contract. Furthermore, jury question 5 asked whether SWB's failure was a proximate cause of appellee's damage. Where the trial court has submitted the controlling issues raised by the pleadings and evidence, we may not reverse the case for "failure to submit other various phases or different shades of the same issue." *Lively Exploration Co. v. Valero Transmission Co.*, 751 S.W.2d 649, 656 (Tex. App.—San Antonio 1988, writ denied) (op. on reh'g) (upholding trial court's submission of jury question asking whether appellee failed to take or pay for a Daily Contract Quantity of gas, rather than asking whether appellee breached the contract), *appeal dismissed,* —— U.S. ——, 110 S.Ct. 1104, 107 L.Ed.2d 1013 (1990).

SWB next claims that the trial court failed to instruct the jury that an act, rather than an omission, was required to support a finding of contractual interference. Because we found no merit to SWB's third point of error claiming that an act, and not an omission, can support a finding of tortious interference with contract, we likewise find no merit to this contention.

■ SWB next claims that the trial court failed to instruct the jury that intent to cause harm is a necessary element of tortious interference with contract. Under question 4, the charge contained the following instruction:

> By the term "intentionally" is meant that a party desires to cause an act, practice or course of conduct, or knows that the act, practice or course of conduct is substantially certain or reasonably calculated to follow.

SWB contends the trial court erred in refusing to submit the following tendered definitions:

> 1. In order to find that [SWB] intentionally interfered with [appellee's] contract you must find that [SWB] willfully

and intentionally committed *acts*, or engaged in a course of conduct reasonably calculated to cause damage to [appellee's] rights under its Fountainview project contract with the City of Houston.

2. "Intentionally" means that the actor desires to cause the interference or he knows that interference is substantially certain to occur.

Under TEX.R.CIV.P. 277, the trial court "shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." Trial courts have wide discretion in implementing this rule. *See Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). An error in instructing the jury is not reversible unless it "was reasonably calculated to cause and probably did cause rendition of an improper judgment...." TEX.R.APP.P. 81(b)(1).

In support of its contention that intention to cause harm is required, SWB cites *Marathon Oil Co. v. Sterner*, 745 S.W.2d 420, 423 (Tex.App.—Houston [14th Dist.] 1988), *aff'd in part, rev'd in part on other grounds*, 767 S.W.2d 686 (Tex.1989), and *CF & I Steel Corp. v. Pete Sublett and Co.*, 623 S.W.2d 709, 713 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). These cases state that wrongful interference with contract is shown "by findings that a defendant willfully and intentionally committed acts calculated to cause damage to the plaintiffs' lawful business when the acts were done with the unlawful purpose of causing damage and loss...." *CF & I Steel Corp.*, 623 S.W.2d at 713. *See Sterner*, 745 S.W.2d at 423. We disagree with this definition to the extent that it means intent to cause harm is a required element of tortious interference with contract.

Intent to injure indicates actual malice, a state of mind that must be shown to recover exemplary damages. *See Clements v. Withers*, 437 S.W.2d 818, 822 (Tex. 1969); *Transfer Prod., Inc. v. Texpar Energy, Inc.*, 788 S.W.2d 713, 715 (Tex.App.—Corpus Christi 1990, no writ); *State Nat'l Bank v. Farah Mfg. Co., Inc.*, 678 S.W.2d 661, 689 (Tex.App.—El Paso 1984, writ dism'd by agrmt.); *Armendariz v. Mora*, 553 S.W.2d 400, 407 (Tex.App.—El Paso 1977, writ ref'd n.r.e.). Actual malice or intent to injure is not a required element where a plaintiff seeks compensatory damages for tortious interference with contract. *Clements*, 437 S.W.2d at 822; *State Nat'l Bank*, 678 S.W.2d at 689-90. Tortious interference with contract is an intentional tort and intent generally denotes "that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." RESTATEMENT (SECOND) OF TORTS § 8A (1965). *See Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985) (quoting the § 8A definition of intent in connection with allegation of intentional injury). Section 766 of the Restatement concerns intentional interference with contract performance and contains the following comment regarding intent:

> *j. Intent and purpose.* The rule stated in this Section is applicable if the actor acts for the primary purpose of interfering with the performance of the contract, and also if he desires to interfere, even though he acts for some other purpose in addition. The rule is broader, however, in its application than to cases in which the defendant has acted with this purpose or desire. It applies also to intentional interference, as that term is defined in § 8A, in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.

RESTATEMENT (SECOND) OF TORTS § 766 comment j (1965).

Although the trial court's instruction may have been clearer if it had stated that the intent required is that the party desires to interfere with the contract, rather than stating that the party desires to act, the instruction submitted is not an erroneous statement of the law. We find no error in the submission of this instruction.

■ Finally, SWB claims that jury question 4 improperly includes the undefined phrase "without justification." In point of error five, SWB claims error in the trial court's failure to submit the tendered jury question on the affirmative defense of justification. SWB objected to jury question 4 on the ground that justification is an affirmative defense, pleaded by SWB, that should be submitted in a separate question with appropriate instructions. SWB tendered the following question:

Do you find from a preponderance of the evidence that [SWB's] intentional interference was privileged or justified?

Answer "Yes" or "No"

ANSWER _____

Your [sic] are instructed that an interference is "privileged" or "justified" where the interference was the result of the exercise by the interferor of its lawful rights or where the interference was the result of the acts by the interferor in the advancement of an interest(s) of [sic] equal or superior to that of the party complaining of the interference. In determining the importance of the interest of the interfering party and the interest of the complaining party, you may not take into consideration the respective sizes or financial condition of the parties. Further you may not determine the relative importance of the competing interests based on the costs associated with the interest.

Justification is an affirmative defense upon which SWB had the burden of proof. *See Sterner*, 767 S.W.2d at 690. We agree with SWB that, by including the phrase "without justification," jury question 4 erroneously placed the burden of proof on appellee to show that any interference was unjustified. Jury issues "should be so framed as to definitely place the burden upon the party pleading the affirmative of the question included in the special issue." *CF & I Steel Corp.*, 623 S.W.2d at 712. Although we find the trial court erred in the submission of the phrase "without justification" in jury question 4, we do not find that this error "was reasonably calcu-

lated to cause and probably did cause rendition of an improper judgment...." TEX. R.APP.P. 81(b)(1).

■ In submitting a case to a jury, a trial court should submit appropriate instructions when requested. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986). Furthermore, the trial court must explain any legal or technical terms. *K–Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 636 (Tex.App.—Houston [1st Dist.] 1984), *writ ref'd n.r.e.*, 686 S.W.2d 593 (Tex.1985). The trial court commits reversible error in failing to provide such instructions, however, only if this failure probably resulted in rendition of an improper verdict. *See* TEX.R.APP.P. 81(b)(1). Although the trial court erred in not providing the jury with the definition of the term "justification" as that term is used in connection with contractual interference, we do not find that the court's failure to submit the requested instruction probably resulted in rendition of an improper judgment. Accordingly, we overrule points four and five.

■ In point of error six, SWB claims the trial court erred in submitting question 7 because it failed to state the proper elements required to support an award of punitive damages. In question 7, the jury was asked whether it found that appellant's "failure was committed with malice and in wanton disregard of the rights of [appellee]." Accompanying this question was the following instruction:

You are instructed that "malice" means ill will or intent to injure. Malice may be actual or implied. Implied malice exists when the conduct in question is committed without just cause or excuse, or is committed with gross or wanton indifference to the rights of another.

■ Appellant contends that "implied malice," defined as the commission of an act "without just cause or excuse," is insufficient to support an award of punitive damages. We agree. The type of malice required to support a punitive damages recovery varies with the nature of the wrongful act alleged. *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118, 121 (Tex.

Civ.App.—Tyler 1975, writ ref'd n.r.e.). To recover exemplary damages for interference with contract, actual malice must exist. *Clements v. Withers,* 437 S.W.2d 818, 822 (Tex.1969); *Top Value Enter., Inc. v. Carlson Mktg. Group, Inc.,* 703 S.W.2d 806, 813 (Tex.App.—El Paso 1986, writ ref'd n.r.e.); *Ragsdale,* 532 S.W.2d at 121. Actual malice means "ill-will, spite, evil motive, or purposing the injuring of another." *Clements,* 437 S.W.2d at 822. Thus, the instruction submitted by the trial court, allowing the jury to assess punitive damages based on a finding of implied malice, was erroneous.

▮▮▮ In point of error seven, SWB claims that no evidence supports the jury's finding of malice. In reviewing a no evidence challenge, we must consider only the evidence and inferences tending to support the jury's finding and disregard all contrary evidence. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). We agree with SWB that no evidence supports a finding of actual malice.

The evidence shows that the City notified SWB well before initiation of construction that the cables would have to be moved. Employees of John Carlo and the City testified that, after construction began, they repeatedly contacted SWB about relocating the cables and that SWB employees responded that they would "get to it ASAP." Guy, an SWB employee, testified that, because of SWB's planned construction of an underground conduit, the temporary relocation of cables was, in his opinion, a waste of money. SWB did eventually relocate all of its cables, but it did so in sections as construction reached those sections of the road. John Carlo's expert witness testified that this staggered method of relocating the cables resulted in delays in John Carlo's performance. Although the jury could have found that this evidence showed implied malice, or that SWB intentionally acted without just cause or excuse, it does not show that SWB acted with spite, evil motive, or intent to injure John Carlo. Thus, we find no evidence of actual malice warranting an award of punitive damages.

Because the erroneous instruction allowed the jury to award punitive damages based on a finding of implied malice and because no evidence supports a finding of actual malice, we hold that the submission of question 7 probably resulted in an improper verdict. We sustain point six. Furthermore, we find that the trial court erred in awarding punitive damages based on the jury's finding of malice because no evidence supports a finding of actual malice, and even if evidence supported a finding of implied malice, such a finding does not support an award of punitive damages for intentional interference with contract. We sustain point of error seven.

Appellee raises two cross points of error regarding the trial court's refusal to award attorney's fees. In cross point of error one, appellee claims the trial court erred in not finding as a matter of law that appellee was a third party beneficiary of the city ordinance. In cross point two, appellee claims error in the trial court's denial of appellee's motion for judgment requesting attorney's fees.

▮▮▮ A third party may recover on a contract made between other parties only if the contract was made for the third party's benefit. *Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 775 (Tex. 1983); *Economy Forms Corp. v. Williams Bros. Constr. Co., Inc.,* 754 S.W.2d 451, 456 (Tex.App.—Houston [14th Dist.] 1988, no writ). "To qualify as one for whose benefit the contract was made, the third party must show that he is either a donee or creditor beneficiary of, and not one who is benefitted only incidentally by the performance of the contract." *M.E. Sandlie Trust v. Pioneer Nat'l Title Ins. Co.,* 648 S.W.2d 761, 762 (Tex.App.—Corpus Christi 1983, no writ). *See Republic Nat'l Bankers Life Ins. Co.,* 427 S.W.2d 76, 80 (Tex. Civ.App.—Dallas 1968, writ ref'd n.r.e.).

Section 14 of the Ordinance provides:

The telephone company, shall, upon the written request of the City, relocate its facilities situated within any street at no expense to the City, where reasonable and necessary to accommodate street

widening or improvement projects of the City.

This language does not expressly or impliedly evidence any donative intent by SWB and the City to benefit appellee. Thus appellee may only succeed if it qualifies as a creditor beneficiary.

■ A third party is a creditor beneficiary if "the performance of the contract will satisfy an actual (or supposed) or asserted duty of the promisee to the beneficiary." *M.E. Sandlie Trust,* 648 S.W.2d at 762. This duty may be an "indebtedness, contractual obligation, or other legally enforceable commitment" owed to the third party. *See MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 11 (Tex.App.—Dallas 1988, writ denied). Appellee offers paragraph 4 of paragraph C of its contract with the City as evidence of a contractual obligation. This paragraph, entitled *"Standard Paving Specifications and Special Specifications,"* obligated appellee to give owners of public utilities at least thirty-six hours notice before commencing work for the relocation of facilities in conflict with appellee's proposed contract work. We do not interpret this section as a contractual obligation owed by the City or SWB to appellee. We further find no evidence of any legally enforceable commitment by the City or SWB to appellee that performance of the ordinance contract would satisfy. Thus, we hold that the trial court committed no error in determining that appellee was not a third party beneficiary to the ordinance contract. Because appellee sought attorney's fees only on the ground that it was a third party beneficiary, we further hold that the trial court did not err in denying appellee's motion for judgment requesting the award of attorney's fees. We overrule both cross points.

We reverse the portion of the trial court's judgment that awards appellee $500,000.00 in punitive damages and we render judgment that appellee take nothing as to its punitive damages claim. In all other respects, the judgment is affirmed.