J.H. SCHICK d/b/a the Schick Drilling Company, Petitioner,

v.

WM. H. McGEE & CO., INC. and Baloise Insurance Company of America, Respondents.

No. D–0235.

Supreme Court of Texas.

Dec. 9, 1992.

Brian E. Cutbirth, Abilene, Kevin Dubose, Houston, for petitioner.

Richard M. Mosher, Randy A. Nelson, Dallas, for respondents.

## ORDER ON CAUSES

Joint motion of the parties to dismiss filed herein on October 2, 1992, is granted

The judgments of the courts below, 792 S.W.2d 513, are vacated, and the cause is remanded to the trial court for entry of judgment in accordance with the settlement agreement of the parties

Concurring opinion on Order granting Motion to Dismiss by DOGGETT, J., joined by MAUZY, J.

DOGGETT, Justice, concurring on Order Granting Motion to Dismiss.

Delay once again takes its toll. Oral argument in this cause was heard on March 6, *1991*. Twenty-one months have passed,[1] and the parties have heard nothing. The failure to announce a decision is totally unjustified. Apparently a small business that suffered a loss to its only drilling rig over six years ago finally gave up on the justice system, as well may have its opponent, a national insurance company.

Undoubtedly settlement is to be favored and encouraged, *see Gee v. Liberty Mut.*

*Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989), but it should not be compelled by a court's failure to provide a timely answer. Unfortunately these are far from the only parties to have given up when this court offered delay instead of justice.

Some cases, by their very nature, demand long periods for deliberation, and certainly those presenting issues on which the court is closely divided necessarily may take more time than when consensus is achieved.[2] On some, since judges are only human, there will be occasional lapses. Perfection cannot be achieved, but at least we should strive for an end to indifference concerning the need for timely disposition of cases—an end to purposeful or consistently neglectful delay.

When repeated efforts at internal reforms failed to resolve this problem, I addressed it in *Delaney v. University of Houston*, 835 S.W.2d 56, 61 (Tex.1992) (Doggett, J., concurring). There a woman raped in 1984 and "relying on an uncontested three-page affidavit [was forced] to wait seventeen months after [oral] argument [in this court] to be given a misleading answer." *Id.* Similarly, in *Greathouse v. Charter National Bank–Southwest*, 35 Tex.Sup.Ct.J. 1017, 1020 1992 WL 379408 (July 1, 1992, motion for rehearing pending) (Doggett, J., concurring), "a single narrow issue [with a] rather modest record [produced] a sixteen month lapse between argument and release of [a brief] opinion." *Id.* at 1021. I noted that:

A dilatory resolution of the issue presented injects prolonged uncertainty into commercial litigation, with resulting unfairness to businesses instituting suits to enforce debts, as well as to debtors who seek to ensure the proper calculation of any claimed deficiency.

*Id.*

Unfortunately the situation has not improved. Increasingly, the delay in this

---

1. The parties filed their joint motion to dismiss on October 2, 1992, at which time this cause had been pending nearly nineteen months. That motion has lingered here an additional two months.

2. *Compare MBank El Paso v. Sanchez*, 836 S.W.2d 151 (Tex.1992) (5–4 decision, with two dissenting opinions), *with Greathouse v. Charter National Bank–Southwest*, 35 Tex.Sup.Ct.J. 1017 (July 1, 1992, motion for rehearing pending) (decision unanimous on merits).

court's taking action prompts an inquiry from counsel or other interested members of the public as to the status of a pending case. *See, e.g.,* Letter from counsel dated January 16, 1992, and Letter from state senator dated August 12, 1992, *Blount v. Blount,* No. 04–90–00134–CV (Tex.App.— San Antonio, Feb. 6, 1991, writ granted) (No. D–0993) (application granted October 21, 1992, eighteen months after filing with this court); Letter from counsel dated March 1, 1991, *Joachim v. Chambers,* 815 S.W.2d 234 (Tex.1991) (C–9115) (cause decided sixteen months after argument); Letter from Governor Ann Richards dated December 13, 1991, *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,* 826 S.W.2d 489 (Tex.1992) (D–1469) (ignoring Governor's request to avoid delay, which was adversely affecting collection of taxes); Letter from counsel dated April 4, 1992, *Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.,* 813 S.W.2d 613 (Tex.App.—Houston [14th Dist.] 1991, writ granted) (No. D–1404) (opinion issued on December 9, 1992, without hearing oral argument, about sixteen months after filing of application); *see also Spencer v. Eagle Star Ins. Co. of America,* 780 S.W.2d 837 (Tex.App.—Austin 1989, writ pending) (application on file more than two and one-half years, since January 24, 1990, has yet to be acted upon).

The facts of the particular case which the court today dismisses exemplify the likely consequences of judicial inaction. J.H. Schick operated a one-rig drilling company, which was insured by Baloise Insurance Company of American through Wm. H. McGee & Co., Inc., its managing agent. After a blowout on June 25, 1986 exposed the rig to large quantities of hydrogen sulfide gas, Schick reported the event to McGee, who dispatched Sherman Smith, an employee of an independent adjustment firm, to investigate.

Schick's experience with this adjuster was less than satisfactory. Despite his continued assurances that the claim would be promptly resolved and his advice that Schick need not hire an attorney, Smith failed to return numerous telephone calls and did little in the month following the blowout to investigate the loss. Instead of any attempt to resolve his claim, the first communication Schick received from the insurer was a notice of early cancellation of his insurance coverage on the rig effective July 31, 1986.

After Smith threatened to "buy-off" any expert Schick hired, Schick retained an attorney. The sworn proof of loss, which they prepared to accompany a claim letter, was rejected by the insurer on August 27, 1986, as being "premature" as to damages. Schick had requested that the company have a qualified metallurgist inspect the rig for structural damage from exposure to toxic gas. Although recommending to McGee that this be done, Smith later hired a nonmetallurgical engineering firm, which estimated the cost of repairs at $45,000 in a report dated September 2, 1986.

In their brief and in argument before this Court, McGee and Baloise have repeatedly stated that coverage for blowout damage was undisputed, and that only the amount of the loss was at issue. Nonetheless, and despite having received the engineers' damage estimate, they neither contacted Schick to seek claim settlement nor at any time denied payment. Eventually on October 13, 1986 Schick filed suit against McGee and Baloise for breach of contract. On March 11, 1987, still having heard nothing, he amended his pleading to add claims for unfair insurance practices and breach of the duty of good faith and fair dealing. The trial court rendered judgment for Schick; the court of appeals reversed in part. 792 S.W.2d 513. Thereafter, on August 23, 1990, Schick filed an application for writ of error in this court.

Because this small businessperson could not get a claim resolved regarding his one drilling rig within four months, he turned to the courts. When another six months had passed without resolution, he claimed unfair insurance practices. Now his six months wait has, in the Texas system of justice, extended to six years, the last two years of which have occurred with his application for relief pending in this court.

The issue here is not whether the insured or the insurer would have prevailed in this

court or whether the settlement they reached was advantageous for any particular litigant. When this court delays nearly two years in deciding a case such as this, no one wins and everybody loses. Failure to issue a timely opinion affects not only these litigants but many others whose cases present similar legal questions.[3] And these are not just other numbered files of paper but the future of families and careers and businesses. *See Greathouse,* 35 Tex.Sup.Ct.J. at 1021 (Doggett, J., concurring) (discussing uncertainty created by delay in deciding issue common to many commercial transactions).

The frustration which many in our society understandably experience at the slow plodding of the legal system is only reinforced by what is happening here. This court should be setting a standard for all others across the state to emulate. We can hardly complain of trial court backlog or delay in the courts of appeals when this court's own record is so lacking. As I have written previously,

> A dilatory resolution of the issue presented not only disserves the litigants before us, but also breaches the public's trust in performing the duties of the judiciary in a timely and responsible manner.... When the "traditions" of this court cannot produce expeditious and fair resolution of litigation, they must be changed. ... Everyone would be better served by fewer excuses and more leadership in getting the important work of this court accomplished.

*Delaney,* 835 S.W.2d at 61. I have no choice but to concur in the order granting the parties' Joint Motion to Dismiss, but I do so without condoning the injustice that has occurred here.

MAUZY, J., joins in this concurring opinion.

---

**3.** After the filing of the dismissal motion in this case, the court set argument in three cases presenting similar issues. *Allied General Agency, Inc. v. Moody,* C–9992, *National Union Fire Ins. Co. v. Dominguez,* D–0040, and *Lyons v. Miller,* D–0664. These applications have been pending in this court since June 20, 1990, July 10, 1990, and January 7, 1991, respectively.