BENEFIT TRUST LIFE INSURANCE COMPANY, Appellant,

v.

Leslie LITTLES and The City of Victoria, Appellees.

The CITY OF VICTORIA, Appellant,

v.

BENEFIT TRUST LIFE INSURANCE COMPANY, Appellee.

No. 04–91–00673–CV.

Court of Appeals of Texas, San Antonio.

Oct. 29, 1993.

Rehearing Denied Oct. 29, 1993.

Second Rehearing Denied Dec. 21, 1993.

456

John Griffin, Jr., Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, Philip K. Maxwell, Tim Labadie, Longley & Maxwell, L.L.P., Austin, for appellees.

Larry F. York, Bob E. Shannon, Joseph R. Knight, Baker & Botts, Austin, for Benefit Trust Life Ins. Co.

William M. McKamie, Charles H. Sierra, Denton, McKamie & Navarro, P.C., San Antonio, for City of Victoria.

Before CHAPA, C.J., GARCIA, J. and REEVES, C.J.[1] (Retired).

## ON APPELLANT'S MOTION FOR REHEARING & MOTION FOR REHEARING EN BANC AND ON APPELLEES' MOTIONS FOR REHEARING

### OPINION

CHAPA, Chief Justice.

Appellant's motion for rehearing and motion for rehearing en banc are denied. Appellees' motions for rehearing are similarly denied. Our previous opinion of August 31, 1993 is withdrawn, and the following is substituted.

This is an appeal from a judgment rendered against appellant, Benefit Trust Life Insurance Company, who was sued by Leslie Littles and the City of Victoria, appellees, for bad faith in the handling of a claim for the cost of Leslie Littles' medical treatment.

Benefit Trust has raised numerous grounds of error on appeal, of which we have identified the following dispositive issues:
1) whether Littles had standing to sue under the Texas Insurance Code;
2) whether judgment could be entered against Benefit Trust based on the jury's responses to the special issues;
3) whether sufficient evidence exists to support the actual damage awards for both Leslie Littles and the City of Victoria;
4) whether sufficient evidence exists to support the trial court's award of attorney fees to Leslie Littles; and
5) whether the trial court erred in its calculation of attorney fees and prejudgment interest.

Regarding the City of Victoria's cross-claim against Benefit Trust Life Insurance Company, the single issue on appeal is whether the trial court abused its discretion in refusing to allow the City to make a trial amendment to increase exemplary damages. We find the trial court made several errors in its calculation of prejudgment interest and attorney fees and thus hold that the judgment award must be modified. Otherwise, we affirm the judgment in all other respects.

## I. FACTUAL BACKGROUND

Leslie Littles was employed by the City of Victoria and medically insured by the City's self-funded employee health insurance plan. On January 16, 1988, Littles tried to start a fire for a barbecue with gasoline. He was accidentally burned over twenty-one percent of his body and sent to St. Luke's Lutheran Hospital in San Antonio for treatment. Doctors, working for Burn Care Associates, operated on Littles at least four times while he was in the hospital, using new techniques to treat his injuries. The multiple surgeries performed by Burn Care amounted to $37,142.25 in costs.

Littles' legal problems began when Burn Care Associates was only paid $12,093.60 by the City's employee health plan for his treatment, leaving a balance of $25,048.65. The City did not directly refuse to pay Burn Care. Instead, Benefit Trust Life Insurance, which was hired by the City of Victoria to administer its claims, made the decision to refuse payment. Under a contract signed by Benefit Trust and the City of Victoria, Benefit Trust was hired by the City to process claims, make payment on claims, and conduct other administrative tasks involving the settlement of claims. It was not personally liable to any claimant for benefits owed by the health plan. Payments made by Benefit Trust were disbursed from an account maintained by the City of Victoria.

Benefit Trust was obligated to pay claims on behalf of the City only to the extent they did not exceed the "prevailing fee" for care provided. The employee health plan handbook provided in part, "No Benefits are paid for ... charges in excess of the Prevailing Fee for the service or supply...." The handbook defined prevailing fee as "[t]he lesser of (1) the fee most often charged by the provider for the same service or supply; or (2) the fee most often charged in the same

---

1. Chief Justice Blair Reeves (Retired), not participating.

area by providers with similar training and experience for comparable services or supply." Meanwhile, the City of Victoria purchased a separate excess risk insurance policy with Benefit Trust Life Insurance to protect its employee health plan. The policy sheltered the City's health care plan from extraordinarily high medical claims by having Benefit Trust reimburse the City for claims exceeding $50,000 for any single employee in a one year period.

Benefit Trust . explained to Littles in a letter dated November 15, 1988 that it would only pay part of the costs he incurred while undergoing treatment with Burn Care Associates. It decided to limit its payment after an independent reconstructive surgery consultant claimed Burn Care's fee exceeded the "usual and customary allowable fee" for its treatment, hence exceeding the "prevailing fee" limitation of the group health plan. Burn Care, however, sent a written demand for payment of the balance on June 29, 1989.

After an unsuccessful attempt to recover the full payment, Burn Care sued Littles and Benefit Trust. Littles subsequently filed a cross action against Benefit Trust and a third-party claim against the City of Victoria. The various defendants filed additional claims against each other. The City eventually paid Burn Care for the unpaid balance, and Benefit Trust reimbursed the City under the excess risk insurance policy for the

amount of the cost of Littles' medical treatment exceeding $50,000.

Burn Care won a summary judgment against Littles, nonsuited the other defendants, and dropped out of the lawsuit. Leslie Littles and the City of Victoria were realigned as plaintiffs against Benefit Trust.[2] The case went to trial on June 25, 1991. The jury found that Benefit Trust was liable to Littles and the City of Victoria for committing violations of the Insurance Code, either knowingly or with conscious indifference. The jury also found that Benefit Trust breached its administrative agreement and the excess risk insurance contract with the City of Victoria. The jury assessed actual damages, exemplary damages, and attorney fees.

The judgment entered by the trial court held Benefit Trust liable to Littles for $1,674,132.80. This figure included actual damages, prejudgment interest on actual damages, statutory damages under the Insurance Code, and attorney fees. The court also ordered an award of postjudgment interest at ten percent per year until paid. The court also held Benefit Trust liable to the City of Victoria for $116,767.31, which included actual damages, prejudgment interest, and statutory damages under the Insurance Code. The court additionally granted a separate award of attorney fees and postjudgment interest at ten percent per year until paid. Both Benefit Trust and the City

---

**2.** In Littles third amended cross action against Benefit Trust, which was filed before the parties were realigned, Littles generally urged the following causes of action:

1) Benefit Trust violated its contracts of insurance to the detriment of Littles;

2) Benefit Trust violated its duty of good faith and fair dealing in denying or delaying payment of the medical claim;

3) Benefit Trust violated the Texas Insurance Code and the rules and regulations of the Texas State Board of Insurance;

4) Benefit Trust was negligent and grossly negligent in evaluating and adjusting the claim, handling the claim, and delaying or denying payment of the claim;

5) Benefit Trust violated its contracts with City of which Littles is a third party beneficiary;

6) Benefit Trust violated the Deceptive Trade Practices Act of the Texas Business and Commerce Code;

7) Benefit Trust committed the above violations knowingly, willfully, intentionally, or with conscious indifference.

The pleadings also alleged that Littles incurred the following actual damages: unpaid medical expenses owed to Burn Care Associates, interest and attorney fees; unpaid medical expenses in the future; disfigurement; mental anguish; and incidental expenses. The pleadings asked for actual damages, reasonable attorney fees, prejudgment and postjudgment interest, exemplary damages, and statutory damages.

The City of Victoria's fifth amended cross-claim against Benefit Trust essentially alleged the same causes of action and requested the following relief: actual damages, exemplary damages, statutory damages, prejudgment and postjudgment interest, court costs and attorney fees, and a judgment for contribution against Benefit Trust.

were found liable to Littles for $250,308.26, plus postjudgment interest, of which the City obtained a judgment for contribution against Benefit Trust. The court declined to enter a judgment for exemplary damages.

## II. STANDING UNDER THE INSURANCE CODE

In its first point of error, Benefit Trust contends that Littles has no standing to bring a cause of action under article 21.21 of the Texas Insurance Code, which forbids unfair competition and practices in the insurance industry. The final judgment granted Littles statutory damages and attorney fees based on the Insurance Code by stating:

> It ... appears to the Court that Plaintiff LESLIE LITTLES is entitled to an award of ... ($669,653.12) assessed pursuant to the Texas Insurance Code Article 21.21, Sec. 16. It further appears to the Court that Plaintiff LESLIE LITTLES is entitled to attorney's fees and costs of court as set forth below, which relief is authorized by Texas Insurance Code Article 21.21, Sec. 16.

The pertinent provision under which a party seeking relief has standing under the Code is section 16 of article 21.21, which reads:

### Relief Available to Injured Parties

(a) Any person who has sustained actual damages as a result of another's engaging in an act or practice declared [unfair under] this Article or in the rules or regulations lawfully adopted by the [State Board of Insurance] under this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice, may maintain an action against the person or persons engaging in such acts or practices.

### A. The Parties' Arguments

Benefit Trust argues Littles fails to fit within the description of an injured party entitled to relief under this section. It cites to various cases which hold that a person who recovers as an "injured person" under the Insurance Code must either be an in-sured, a beneficiary of an insurance policy, or a person who relied to his detriment on an insurance policy. Benefit Trust primarily bases its argument on the following cases: *Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), *Warfield v. Fidelity & Deposit Co.*, 904 F.2d 322 (5th Cir.1990), and *Brown v. Granatelli*, 897 F.2d 1351 (5th Cir.), *cert. denied*, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990).

Littles responds with two main assertions. First, he contends the Insurance Code is meant to be liberally construed and thus applies to a broad range of potential parties who may be injured by an insurance company's actions, including himself. Therefore, an injured party need not necessarily be an insured, a beneficiary, or person who has detrimentally relied on an insurer's representations. Second, Littles maintains that he is a beneficiary of both the administrative contract in which Benefit Trust was hired to adjust the City's health insurance claims and the excess risk insurance policy that protects the City's employee benefit program from exorbitant claims.

### B. Analysis

After reviewing the cases cited by Benefit Trust, we acknowledge that various cases have limited to who can recover as an "injured party" under the Insurance Code. However, the entire body of the Insurance Code is meant to be liberally construed. TEX.INS.CODE ANN. art. 21.21, § 1(b). Standing to sue under the Insurance Code is decidedly broader than under the Deceptive Trade Practices Act (DTPA), which is incorporated into the Insurance Code as an available cause of action, yet requires a party suing under the DTPA alone to prove the status of "consumer." *See Aetna Casualty & Sur. Co. v. Marshall*, 724 S.W.2d 770, 772 (Tex.1987). Under the Insurance Code, however, one need only prove that he is a person "who has sustained actual damages as a result of another's engaging in" an unfair or deceptive act or practice prohibited by the Code. TEX. INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1993).

Benefit Trust points out several cases limiting the class of individuals who can sue as injured persons under the Insurance Code. In *Chaffin v. Transamerica Insurance Co.* for example, two homeowners hired a subcontractor to waterproof their roofs. Because of the subcontractor's negligent work, the homes were damaged during a rainstorm. The subcontractor's insurer took three years to settle the property damage claims. The homeowners sued the insurer under article 21.21 for tortious handling of the property claim. The court of appeals ruled that they could not sue the insurer as injured parties because they were neither insureds nor beneficiaries of the insurance policy between the insurer and the subcontractor. 731 S.W.2d at 731. In *Warfield v. Fidelity and Deposit Co.*, the directors and shareholders of a failed bank sued a company that issued, but refused to pay, the claims on a blanket bond secured by the bank. The circuit court denied recovery under the Insurance Code, ruling that the Texas law did not permit the plaintiffs to sue as injured parties under the Texas Insurance Code unless there is a direct and close relationship between the wrongdoer and the injured parties. 904 F.2d at 326. It concluded a close relationship results when there is privity of contract between the injured party and the insurer or when the injured party has relied to his detriment on the representations of the insurance company. *Id.* at 327.

■ With this background in mind, Littles nevertheless contends he is a third party beneficiary of the administration contract between the City of Victoria and Benefit Trust and thus may sue under the Insurance Code. *See CNA Ins. Co. v. Scheffey,* 828 S.W.2d 785, 791 (Tex.App.—Texarkana 1992, writ denied); *Chaffin,* 731 S.W.2d at 731; *Warfield,* 904 F.2d at 327. Benefit Trust counters that none of the contracts secured between it and the City creates a third party beneficiary status in Littles.

■ Benefit Trust correctly states that a presumption exists against contracts creating the status of an intended third-party beneficiary. *Brunswick Corp. v. Bush,* 829 S.W.2d 352, 354 (Tex.App.—Fort Worth 1992, no writ). An intended third party beneficiary is either a donee or creditor beneficiary of a contract and not merely benefitted incidentally by the performance of a contract. *Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.,* 813 S.W.2d 613, 621 (Tex.App.—Houston [14th Dist.] 1991), *rev'd on other grounds,* 843 S.W.2d 470 (Tex.1992). An intended third party beneficiary can sue on a contract, whereas an incidental beneficiary has no enforceable rights against the promisor or promisee of a contract. *Republic Nat'l Bank of Dallas v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 80 (Tex.Civ. App.—Dallas 1968, writ ref'd n.r.e.).

■ "A third party is entitled to recover upon a contract made between other parties only if the parties intended to secure some benefits to that third party, and only if the contract was entered into directly and primarily for the third party's benefit." *Economy Forms Corp. v. Williams Bros. Constr. Co.,* 754 S.W.2d 451, 456 (Tex.App.—Houston [14th Dist.] 1988, no writ). To establish intended third-party beneficiary status, one must prove that the contracting parties had the intent to create a third party beneficiary and that the intent is clearly and fully spelled out in the terms of the contract. *Brunswick Corp.,* 829 S.W.2d at 354. Courts will not create third party beneficiary status by implication. *Foster, Henry, Henry & Thorpe, Inc. v. J.T. Constr. Co.,* 808 S.W.2d 139, 140 (Tex.App.—El Paso 1991, writ denied).

The facts of the present case show that Benefit Trust was hired to evaluate and manage the claims and payments under the City's employee benefit plan. It was conferred with the exclusive power to adjust claims, and the City did not participate in Benefit's decision-making process. The administration contract specifically referred to the employees as plan participants of the health insurance program. It principally required Benefit Trust to "pay benefits to plan participants" out of City funds. It also entrusted Benefit with other miscellaneous duties, such as preparing and printing claim forms for use by plan participants, preparing descriptive booklets for distribution to all plan participants, and assisting in the preparation of a federally-mandated annual report and making it available to plan participants.

Without the administration contract, these duties would otherwise have been conducted by the City of Victoria for the benefit of the participants under its group health plan, which was provided by the City to its employees partly in exchange for their employment services. Instead, the City hired Benefit Trust at its own expense and delegated these duties to Benefit Trust. Clearly, the contract was entered into for the benefit of the plan participants and that this intent was reasonably apparent from the contract. *Brunswick Corp.*, 829 S.W.2d at 354.

Benefit Trust further argues that any intent to confer a benefit on participants under the plan is negated by the following language in the contract: "The Administrator shall assume no liability under this agreement except to provide the administrative services selected from Schedule A. In providing such services the Administrator will act only as agent of the Employer and not as principal obligated to any other party."

However, this language must be considered in light of other provisions in the contract. The contract also reads, "All funds used in the payment of benefits under the plan and in accordance with this Agreement shall be funds of the Employer. The Administrator shall not be obligated to advance any of its funds...." Before this, the contract reads, "The Administrator shall have no liability to any claimant for benefits whether incurred during the time this Agreement is in force or subsequent to its termination for any reason." Considering the contract language as a whole, it is clear the language cited by Benefit Trust was inserted merely to guarantee the company was not personally liable to claimants for benefits under the group health plan. It does not negate any benefit the contract intended to have conferred upon Littles, as Benefit Trust was retained to manage the claims under the City's health insurance program for all the City employees. We hold that Littles was a third party beneficiary of the contract and thus fell within the class of persons who could sue as injured parties under the Insurance Code.

■ Even if Littles were not a third party beneficiary of the administration agreement, we would still reach the same result. We are duty bound to construe the various provisions of the Code in a liberal manner. TEX.INS.CODE ANN. art. 21.21, § 1(b) (Vernon Supp.1993). We understand the rationale in limiting the class of persons who can sue under the Insurance Code. The courts in the cases cited by Benefit Trust have drawn a line limiting liability to ensure that standing is not extended so broadly that it encompasses any person whose injury is somehow connected to an insurer's action, no matter how indirect. We agree with the fifth circuit court of appeals in *Warfield* that there must be "a direct and close relationship between the wrongdoer and the claimant." 904 F.2d at 326.

The case of *Hermann Hospital v. National Standard Insurance Co.*, 776 S.W.2d 249 (Tex.App.—Houston [1st Dist.] 1989, writ denied), is an example of when a plaintiff who is neither an insured nor a beneficiary of an insurance policy may recover under the Insurance Code because its injury was directly caused by the actions of an insurance company. A patient was admitted into a hospital that twice sought and received verification from the patient's insurer that the patient was covered by health insurance. Later, the insurer refused to pay the hospital for the expenses incurred in treating the patient. The court of appeals granted the right to recover under the Insurance Code, noting that the hospital suffered damages by relying on the representations of coverage made by the insurance company. *Id.* at 252. *Hermann Hospital* indicates that parties directly injured by an insurance company's unfair or deceptive trade practices may recover as an injured party.

We believe that same liberal construction must apply in this case in which Littles was directly injured by Benefit Trust's refusal to pay a portion of his medical bills with Burn Care Associates. Benefit wielded control over the payment of his claims and knew that its actions would directly affect him or any employee whose claims were adjusted under the City's self-funded health insurance plan. Under the attending circumstances here, Littles was unquestionably closely associated with Benefit Trust, even if he were neither

classified as an insured or a beneficiary, and is thus entitled to recover under the Insurance Code. The point is denied.

## III. CHALLENGES TO THE SPECIAL ISSUES

In its second point of error, Benefit Trust contends that the jury's finding with respect to Question No. 1 cannot support a judgment against Benefit Trust under the Insurance Code because it does not constitute an ultimate finding of fact and is thus immaterial. The question in dispute reads as follows:

### Question No. 1

Did Benefit Trust Life Insurance Company engage in any unfair or deceptive act or practice that resulted in damages to Leslie Littles or the City of Victoria?

"Unfair or deceptive act or practice" means:

1. Engaging in any false, misleading, or deceptive acts or practices;

   "False, misleading, or deceptive acts or practice" means an act or series of acts that have the tendency to deceive an average ordinary person, even though that person may have been ignorant, unthinking, or gullible;

   or

2. Making, or directly or indirectly causing to be made, any assertion, representation, or statement with respect to insurance that was untrue, deceptive or misleading; or

3. Omitting any information or making any false implication or impression that was either misleading or deceptive or had the capacity to be misleading or deceptive; or

4. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of a claim if liability has become reasonably clear.

Specifically, Benefit Trust argues that Question No. 1 fails to submit any act which constitutes a violation of the Insurance Code. In *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129, 132–33 (Tex. 1988), the supreme court summarized the three types of recovery available under the Code:

1) any practice declared unfair or deceptive by section 4 of article 21.21;

2) conduct defined in the State Board of Insurance rules or regulations as unfair methods of competition and unfair or deceptive acts or practices;

3) any practice defined by section 17.46 of the DTPA as an unlawful deceptive trade practice.

*See also* TEX.INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1993). Benefit further argues Question No. 1 is defective because it is very similar to two questions found to be immaterial in *Wm. H. McGee & Co. v. Schick*, 792 S.W.2d 513, 517 (Tex.App.—Eastland 1990), *vacated on other grounds*, 843 S.W.2d 473 (Tex.1992).

■■■ Before addressing this point, we note that Littles insists, and the record shows, that Benefit Trust did not make these objections at the trial court below. A party on appeal is confined to the objections made at trial. *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 825 (Tex.App.—Austin 1990, writ denied). Therefore, the complaints on appeal differ from that at trial and are thus waived. TEX.R.CIV.P. 274.

■■■ Assuming the point was properly preserved, we must nevertheless conclude Benefit Trust's complaints are without merit. The first part of Question No. 1 is broadly phrased, asking whether Benefit Trust engaged in an "unfair or deceptive act or practice." It is followed, however, by accompanying instructions that require the jury to determine whether Benefit Trust committed at least one of four enumerated acts of unfair or deceptive practices, each of which falls within a cause of action available under the Insurance Code. *See Vail*, 754 S.W.2d at 132–33; *see also* TEX.INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1993).

Question No. 1(1) asks whether Benefit Trust engaged in any "false, misleading, or deceptive acts." This language originates from section 17.46(a) of the DTPA, which prohibits deceptive acts in general and is incorporated into section 16 of article 21.21 of the Insurance Code. *Vail*, 754 S.W.2d at

135. Question No. 1(2) asks about misrepresentation. This cause of action is specifically available under the Insurance Code. TEX. INS.CODE ANN. art. 21.21, § 4(2) (Vernon Supp.1993). The language of Question No. 1(3), which asks whether Benefit Trust omitted information or made a false impression, stems from an unfair act defined as prohibited by the State Board of Insurance and is thus properly actionable under section 16 of article 21.21 of the Insurance Code. *See* 28 TEX.ADMIN.CODE § 21.112 (West 1993). Finally, Question No. 1(4), which asks about unfair claim settlement, is derived from article 21.21–2 of the Insurance Code. TEX.INS. CODE ANN. art. 21.21–2, § 2(d) (Vernon 1981). The supreme court ruled that an act defined as prohibited under article 21.21–2 is properly maintainable under section 16 of article 21.21 of the Insurance Code. *Vail,* 754 S.W.2d at 134.

We additionally conclude that Benefit Trust's reliance on *Wm. H. McGee & Co. v. Schick* is misplaced. In *Schick,* the court of appeals reversed the jury findings as to two questions regarding alleged unfair or deceptive acts or practices because they were broadly phrased and failed to specify whether the appellants engaged in any of the three categories of unlawful acts specifically barred by the Insurance Code. 792 S.W.2d at 518. Our analysis above demonstrates that *Schick* is distinguishable because the question in issue here submitted specific grounds of liability derived from the Insurance Code. The point is denied.

■ In its third point of error, Benefit Trust complains about the submission of Jury Question No. 2 to the jury. The question reads as follows:

### Question No. 2

Did Benefit Trust Life Insurance Company fail to act in good faith and deal fairly with the bills submitted by Burn Care Associates, P.A. for medical services rendered to Leslie Littles, and if so, was any such failure a producing cause of injury to ... Leslie Littles?

Failure to "deal fairly" or in "good faith" means:

a. denial or delay in payment of a claim, or any part thereof, if there is no reasonable basis for such denial or delay; or

b. failure to determine whether there was any reasonable basis for a denial or delay. (Answer "Yes" or "No" ...)

c. Leslie Littles <u>Yes</u>

Benefit Trust maintains that as a matter of law it owed no common law duty of good faith and fair dealing to Littles and therefore no cause of action can be maintained.

Littles argues, however, that the failure to exercise good faith in the processing of claims is a cause of action available under section 16 of article 21.21 of the Insurance Code. It is apparent from the conference on the jury charge that Littles' counsel at trial intended for this cause of action to fall under the Insurance Code and not be submitted as a common law cause of action.

■ It is well settled that a common law duty of good faith and fair dealing exists between parties to an insurance contract. *Aranda v. Insurance Co. of N. America,* 748 S.W.2d 210, 212 (Tex.1988). A insurer owes such a duty to the insured in the processing and payment of claims. *Id.* at 212–13; *see also Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987), *modified on other grounds, Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826 (Tex. 1990). The duty arises because of the special relationship that exists between the parties governed or created by a contract. *Arnold,* 725 S.W.2d at 167. The special relationship "arises from the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims." *Id.* The kinds of situations producing unfairness are: the possibility that insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed and the fact the insurers have exclusive control over the evaluation, processing, and denial of claims. *Id.*

Section 16 of the Insurance Code incorporates conduct defined by the State Board of Insurance as an unfair trade practice. TEX.

INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1993). The Board of Insurance in one provision promulgated that trade practices *determined pursuant to law* to be unfair methods of competition are forbidden. 28 TEX.ADMIN.CODE § 21.3(b) (West 1993). The supreme court concluded that based on this provision, it is empowered to *determine pursuant to law* whether conduct constitutes an unfair trade practice. *Vail,* 754 S.W.2d at 135. Based on its previous holdings in *Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165 (Tex.1987), and *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210 (Tex.1988), the supreme court then concluded that an insurer's lack of good faith in the processing of a claim constitutes an unfair or deceptive act. *Vail,* 754 S.W.2d at 135. Thus the breach of the duty is equivalent to an unfair trade practice and available as a cause of action under the Insurance Code. *See also St. Paul Ins. Co. v. Rakkar,* 838 S.W.2d 622, 628 (Tex.App.— Dallas 1992, no writ).

The question remains whether the duty expressed in *Arnold* and *Aranda* applies to this case and is thus actionable under the Insurance Code. We conclude it does arise here. It is true no contract of insurance exists between Littles and Benefit Trust. Nevertheless, the contract to administer the claims of the City of Victoria's group health plan does create a special relationship between Littles and Benefit Trust.

As our analysis above demonstrates, the contract created a third party beneficiary status in Littles. Furthermore, Benefit Trust exercised exclusive control over the evaluation and processing of claims. The record shows that Benefit Trust delayed in processing the claims for Littles' medical treatment. Ultimately, it refused to pay a portion of the bill from Burn Care Associates, which had the effect of preventing Littles from obtaining additional surgery and delaying his treatment. Moreover, the evidence raised the issue of breach of good faith by showing that it was to Benefit Trust's advantage not to make the payment on the disputed claims because the City's total disbursement had approached $50,000, after which Benefit was liable under the excess

risk insurance policy. According to the jury's answer to Question No. 2, Benefit Trust's conduct throughout this episode was unreasonable. Clearly Littles had unequal bargaining power compared with Benefit Trust and was unable to get Benefit Trust to pay the balance of the bill. In the context of this case and the unique ties among the three parties of this case, a special relationship developed between Benefit Trust and Littles, imposing on Benefit Trust a duty of good faith and fair dealing to Leslie Littles.

Other courts have recognized that the duty expressed in *Arnold* does not always apply to insurers vis-a-vis their insureds. In *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210 (Tex.1988), the supreme court held that a workers' compensation carrier had a duty of good faith and fair dealing in processing the compensation claims of employees under a workers' compensation plan. *Id.* at 212–13. The court held that even though the employee himself had no direct contract with the compensation carrier, a special relationship arose because of a three-party agreement entered into by the employee, the employer, and the compensation carrier wherein the compensation carrier agreed to compensate the employee for on-the-job injuries and the employee agreed to relinquish his common law rights against his employer. *Id.* at 212. In *St. Paul Guardian Insurance Co. v. Luker,* 801 S.W.2d 614 (Tex. App.—Texarkana 1990, no writ), the court of appeals held that a party contracting with an insurer to insure third party beneficiaries owed a duty of good faith and fair dealing to the third parties as it did to the purchaser of the insurance. *Id.* at 618–19. The court extended the insurer's duty in that case to the third parties, whose personal property was lost in a fire at the home of the insured, recognizing that the homeowner's insurance policy was partly obtained to cover the personal property of the third parties. *Id.* Finally, in the case of *Natividad v. Alexsis, Inc.,* 833 S.W.2d 545 (Tex.App.—El Paso 1992, writ granted), the court of appeals held that an adjuster of claims for an insurance company owed a duty of good faith and fair dealing to the insureds of the company's insurance policies. *Id.* at 548. The court noted that the insurance company, which

hired the adjusting firm to process its claims, also owed a duty of good faith and fair dealing, but that this duty extended to the adjusting firm as well since it bore the responsibility of properly and timely paying claims and possessed the ability to obstruct prompt payments of claims. *Id.*

In light of the circumstances of this case and the fact a special relationship may give rise to a duty of good faith in multiple situations, the court did not err in submitting Question No. 2 to the jury. The point is denied.

## IV. LESLIE LITTLES' DAMAGES

### A. Actual Damages

In Points 4 to 9, Benefit Trust lodges several challenges to the portion of the judgment awarding Littles actual damages. The jury question pertaining to these points of error reads as follows:

### Question No. 6

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Leslie Littles for his damages, if any?

Do not include in your answer to (b), (c), or (d), any amount that you find Leslie Littles could have avoided by the exercise of reasonable care....

Do not consider any payment made by any party since September 8, 1989, in figuring these damages.

| | | |
|---|---|---|
| a. | The amount owed by Leslie Littles to Burn Care Associates | $69,533.36 |
| b. | Temporary disfigurement | $25,825.00 |
| c. | Temporary disability | $77,475.00 |
| d. | Mental anguish | $77,475.00 |

We initially note that Benefit Trust combines multiple arguments under these points in violation of Texas Rule of Appellate Procedure 74(d). However, we will address the pertinent complaints raised by Benefit Trust as we perceive them in the interest of justice. TEX.R.APP.P. 74(p).

Benefit Trust first addresses the award of $69,533.36. As indicated earlier, Burn Care sued Littles for unpaid medical bills. Burn Care won a summary judgment against Littles for $69,209.36, which represented the unpaid bills as well as attorney fees, court costs, and prejudgment interest for prosecuting the summary judgment case. The evidence presented at trial suggests the damage of award of $69,533.36 here reflects the amount owed by Littles for the summary judgment, plus postjudgment interest.

■ In Point 4, Benefit Trust argues that the damages based on the summary judgment is improper because Littles and the other parties engaged in a collusive effort to file a summary judgment against Littles to inflate Benefit Trust's damages. The argument here essentially raises a new cause of action, which goes beyond the record and the limits of this appeal. If Benefit Trust believed the parties possibly conspired to drive up the damages, it could have amended its pleadings to assert an additional cause of action based on this claim. However, nothing has been pleaded or proved on this issue, and therefore the complaint is waived.

■ In Point 5, Benefit Trust states "[t]he trial court erred in awarding the amount of Burn Cares summary judgment as an element of Littles' actual damages because the City had already paid a portion of that judgment." This point refers to the fact the City, apparently frustrated by Benefit's delays in paying the outstanding medical claims, paid $25,048.65 to Burn Care on May 21, 1991.

Initially, Benefit argues that the trial court erred in submitting an instruction that prevented the jury from considering any payment made after September 8, 1989, hence eliminating the City's payment from consideration. Benefit Trust, however, fails to submit a specific point about this instruction. TEX.R.APP.P. 74(d). Furthermore, it fails to allege or show that it made any objection to the instruction below or in any other way preserved error. TEX.R.APP.P. 74. Moreover, Benefit fails to show that this argument on appeal was likewise presented to the trial judge below from what it is presently arguing. *Lakeway Land Co. v. Kizer,* 796 S.W.2d 820, 825 (Tex.App.—Austin 1990, writ denied). Consequently, the complaints regarding the trial court's submission of the instruction are hereby denied.

■ Secondly, Benefit raises an argument under this point attacking the judgment because it allegedly violates the one satisfaction rule of *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703, 705 (1935), *overruled on other grounds, Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984), which limits an injured party to a single satisfaction for a single injury. Benefit argues that the judgment award here, which allegedly partially included Littles' debt to Burn Care, constituted a double recovery *for Littles* because the City previously paid Burn Care $25,048.65 for the balance owed on Littles' medical treatment. Hence, Benefit contends it is entitled to an offset for that amount paid by the City. We agree with Littles, however, that the record fails to show how the judgment enables Littles to obtain a double recovery. As far as we can determine from the record, Burn Care has a final judgment against Littles for $69,209.36. There is no evidence in the record reflecting that Littles has been released of this liability or that he was credited for $25,048.65 because of the City's payment. Therefore, Benefit has failed to show how the court erred in rendering a judgment including the amount Littles owed to Burn Care. The point is denied.

■ In Points 4, 7, 8, and 9, Benefit Trust raises several sufficiency points of error. In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex. 1965). If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). In considering a factual sufficiency point, we may not substitute our judgment for that of the trier of fact, but must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, we are not the fact finders and we do not pass upon the credibility of witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ Under Point 4, Benefit Trust inserts a no evidence argument along with its other complaints. It contends that Littles' award for what he owed to Burn Care incorporates the amount of attorney fees won by Burn Care in its summary judgment and that there was no evidence to support these fees.

The record reveals that Littles introduced a copy of the summary judgment order at trial, which generally stated Burn Care was to recover $67,206.36 from Littles, plus post-judgment interest. The order did not specifically list what portion of the judgment reflected attorney fees. However, we find this was not necessary. The charge merely asked the jury at trial what sum of money would compensate Littles for what Littles owed to Burn Care. All Littles had to do was introduce evidence of his total indebtedness to Burn Care. The summary judgment order was such evidence. Littles did not have to break down his indebtedness to indicate the amount owed to Burn Care specifically in attorney fees. Therefore, evidence of attorney fees did not have to be presented at trial. The complaint is denied.

■ In Point 8, Benefit Trust contends the evidence is legally and factually insufficient to support mental anguish damages. To support a finding of mental anguish, the plaintiff must prove a high degree of mental suffering or an intense pain of mind or body. *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 718 (Tex. Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *see also Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 819 (Tex.App.—Corpus Christi 1988, no writ). Mental anguish includes "a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, wounded pride, shame, despair, and public humiliation." *GAB Business Servs., Inc. v. Moore*, 829 S.W.2d 345,

350 (Tex.App.—Texarkana 1992, no writ). Mental anguish requires "more than mere worry, anxiety, vexation, embarrassment, or anger." *Tarrant Bank v. Miller*, 833 S.W.2d 666, 669 (Tex.App.—Eastland 1992, writ denied).

The evidence at trial shows the following. Littles was scarred after he was burned in an accident. After four operations, scarring remained on Littles' lip and neck. Consequently, Littles lacked the ability to turn his neck all the way to the right. Because of Benefit Trust's nonpayment of claims, Littles' bills went unpaid, causing him embarrassment with his doctors. Furthermore, Littles testified that he was "bothered" by his scarring, that he felt "insecure," that it had "burdened" him, that it had affected his relationship with his wife and his son, and that his friends saw him differently as a result of the accident. Littles' wife, meanwhile, testified that prior to the accident, Littles was an outgoing and social person. After the accident, however, his personality changed. Further, she added that Littles had suffered from the entire ordeal.

"Jurors are best suited to determine, by referring to their own experiences, whether and to what extent the defendant's conduct caused compensable mental anguish." *GAB Business Servs.*, 829 S.W.2d at 350. Viewing the evidence in favor of the jury's verdict, we conclude there is sufficient evidence to support its findings. *Stafford*, 726 S.W.2d at 16. Moreover, assessing all the evidence adduced at trial, we cannot say the jury's verdict is manifestly unjust. *Pool*, 715 S.W.2d at 635. The judgment based on mental anguish damages, therefore, is sustained and the point is overruled.

■ In Point 9, Benefit Trust argues the evidence is legally and factually insufficient to support damages for temporary disability. Littles testified at trial that he had trouble driving a street sweeper for the City of Victoria because the scarring on his neck and lip prevented him from completely turning his head to the right. Littles said that his injuries were a hindrance and that his job as an equipment operator in the City's street department often required him to turn his head while operating machinery.

"The amount to damages awarded is uniquely within the jury's discretion." *Lee–Wright, Inc. v. Hall*, 840 S.W.2d 572, 581 (Tex.App.—Houston [1st Dist.] 1992, no writ). Evidently, the jury concluded under these facts that Littles suffered a temporary disability and was entitled to damages. We find the verdict here should not be disturbed since it is supported by evidence of probative value and is not against the great weight and preponderance of the evidence. *Stafford*, 726 S.W.2d at 16; *Pool*, 715 S.W.2d at 635.

■ Benefit Trust nevertheless argues that Littles failed to present evidence showing that his disability resulted in lost wages or benefits. However, Littles did not have to prove this. Damages for physical impairment may be awarded even though the injury "bears no relation to economic loss and does not necessarily affect an injured person's capacity to work and earn money." *Texas Farm Products Co. v. Leva*, 535 S.W.2d 953, 959 (Tex.Civ.App.—Tyler 1976, no writ); *see also Terry v. Garcia*, 800 S.W.2d 854, 858 (Tex.App.—San Antonio 1990, writ denied). The point is overruled.

■ In Point 7, Benefit Trust urges that the evidence is legally and factually insufficient to support "the jury's implicit finding that Littles could not have avoided his damages ... through the exercise of reasonable care." Under Point 6, Benefit Trust also contends that it did not, as a matter of law, cause Littles' damages.

Benefit's complaints stem from the following facts contained in the record. Burn Care was not fully paid for Littles' treatment, and Littles needed one more operation to reduce the scarring on his lip and ease the tightness in his neck. However, because Benefit Trust did not fully pay Burn Care for the treatment, Littles felt embarrassed and his conscience prevented him from requesting the final operation. Littles testified at trial that he believed Burn Care would have performed the operation regardless of his debt, and a doctor for Burn Care confirmed that he would have operated on Littles despite the payment problems. Based on this evidence, Benefit Trust asserts that Littles voluntarily refused treatment, thus causing his own al-

leged disfigurement, disability, and mental anguish damages.

Concerning the arguments under Point 6, we note that conflicting evidence was presented at trial about whether Benefit Trust's conduct caused Littles' injuries. Hence, the source of his injuries was purely a factual question properly submitted to the jury. Even though there was some evidence that Littles could have avoided his damages, this does not mean as a matter of law Benefit Trust did not cause the injuries. Moreover, the record reveals that Benefit Trust requested and received an instruction on mitigation of damages as Question No. 6 asked the jury not to consider any damages Littles could have avoided. Therefore, the matter was decided by the jury, which impliedly found the damages were unavoidable.

■ Thus, the question remains whether the evidence was sufficient to support the jury's finding, as raised by Point 7. The evidence reveals that after four operations, Benefit Trust refused to pay a balance of $25,048.65 of Littles' medical bills. Littles was aware of this debt, embarrassed by the situation, and unsuccessful in persuading Benefit to pay the outstanding balance. Around the time of the accident, he earned about $13,500 per year. Even though his wife also worked, Littles no doubt was concerned about the burden of these medical bills, for which he believed he was liable. An additional operation would have augmented his already existing debt of more than $25,-000. The jury, perhaps considering Littles' salary and his obligation to support a child, apparently found that he should not have been expected to proceed with another operation and risk the possibility that the final operation would not be paid for. *See Thompson v. Quarles,* 297 S.W.2d 321, 327 (Tex.Civ. App.—Galveston 1956, writ ref'd n.r.e.) (it is a fact question for the jury to determine whether a person of ordinary prudence should submit to medical treatment to avoid damages). Applying the appropriate standards, we find there is sufficient evidence and reasonable inferences to support the jury's implied finding that Littles could not avoid his damages. *Stafford,* 726 S.W.2d at

16; *Pool,* 715 S.W.2d at 635. The points are denied.

**B. Attorney Fees**

In Points 10, 11 and 12, Benefit Trust contests the trial court's award of attorney fees. Based on the testimony offered at trial, the jury found that Littles was entitled to $83,000 in attorney fees for the preparation of trial, plus additional fees if the case was appealed. Alternatively, the jury found forty percent of the recovery to be reasonable attorney fees. In the judgment, the trial court awarded $669,653.12 as attorney fees.

■ Benefit Trust first contends that the evidence legally insufficient to support the contingent fee agreement between Littles and his attorneys because the only evidence of a reasonable and necessary fee was merely a statement of the fee agreement by one of Littles' attorneys. However, we find that the record contains sufficient evidence of reasonable and necessary fees.

In support of his claim for fees, Littles' main attorney testified to the following: (1) he has practiced law in San Antonio and Victoria for eight years; (2) he is currently seeking board certification as a civil trial specialist; (3) he and several attorneys who specialize in complex cases incurred a total of 559 hours on this case; (4) this is a relatively complex case involving insurance law; (5) he has participated in fourteen depositions in San Antonio, Victoria, Dallas, and Wisconsin; (6) he has traveled to San Antonio at least fourteen times for various court appearances in this case; (7) Littles could not afford to hire his attorneys on an hourly basis; (8) the customary contingent fee in Bexar County is between forty and forty-five percent; and (9) a forty percent contingent fee is reasonable in this kind of case. Considering the evidence and reasonable inferences in favor of the verdict, we find there is sufficient evidence to support the jury's finding. *Davis,* 752 S.W.2d at 522; *Stafford,* 726 S.W.2d at 16. The point is denied.

■ Benefit Trust next contends that the trial court's award of $669,533.12 is against the great weight and preponderance

of the evidence because it grossly exceeds the evidence of $83,800 incurred in fees based on the attorneys' hourly rates. However, the trial court's award of attorney fees was obviously based on the jury's finding that forty percent constituted "a reasonable fee for the necessary services of Leslie Littles' attorneys ... stated as a percentage of Leslie Littles' recovery." A jury verdict can award attorney fees both as a specific dollar amount or as a percentage of the plaintiff's recovery. *See State Farm Fire & Casualty Co. v. Price*, 845 S.W.2d 427, 436 (Tex.App.—Amarillo 1992, writ dism'd).

Littles' actual damages, prejudgment interest, and statutory penalty damages amounted to $1,004,479.68. Recognizing that Littles' agreed to give forty percent of his total recovery to his attorneys, the court concluded his damages thus represented only sixty percent of the recovery and calculated a total recovery award of $1,674,132.80. Forty percent of the award is equivalent to $669,653.12, the amount granted as attorney fees. Based on this method of calculation, the evidence is factually sufficient to support the attorney fees award. *Pool*, 715 S.W.2d at 635. The point is denied.

■ Finally, Benefit Trust raises several complaints about the calculation of attorney fees. Benefit Trust insists that the fees should be based on the evidence offered at trial—either that the attorneys incurred $83,800 in hourly fees or were entitled to forty percent of recovery based on the contingent fee agreement. We find that the trial court's method of calculating fees does in fact acknowledge the evidence offered at trial as well as consider the jury's finding that forty percent of the *recovery* was a reasonable fee for Littles' attorneys.

In *Great American Insurance Co. v. North Austin Municipal Utility Dist.*, 850 S.W.2d 285 (Tex.App.—Austin 1993, writ filed), the court of appeals addressed an identical situation. First, the court took note of the statutory award of attorney fees under article 21.21 of the Insurance Code. Under the statute, a prevailing party is entitled to "the amount of actual damages plus court costs and reasonable and necessary attorneys' fees." TEX.INS.CODE ANN. art. 21.21,

§ 16(b)(1) (Vernon Supp.1993). The statute also provides for the trebling of actual damages for a knowing violation of the Code. *Id.* The court of appeals then acknowledged that the contingent fee contract in that case expressly provided that attorney fees would be one-third of the plaintiff's *recovery*, not its *damages*. *Great American Ins. Co.*, 850 S.W.2d at 291. Hence, the court ruled that "the court must calculate the total amount of recovery so that after one-third of that total is allocated to attorney's fees, the remaining sum equals the statutorily-required trebled damages." *Id.*

■ The facts of the present case are very similar. One of Littles' attorneys testified there was a forty percent contingent fee agreement with Leslie Littles. Furthermore, the jury held that forty percent of Littles' *recovery* constituted reasonable attorney fees. We are unable to find from the record that Benefit Trust objected to the wording of this question, and hence Benefit waived any objection to the charge on this matter. TEX.R.CIV.P. 274. Accordingly, the calculation of *Great American Insurance Co.* applies here. The forty percent was properly based on the difference between the total recovery and the damages allowed under article 21.21. *Cf. Berry Property Management, Inc. v. Bliskey*, 850 S.W.2d 644, 670–71 (Tex.App.—Corpus Christi 1993, writ granted). Any other means of calculation as urged by Benefit would either diminish the percentage of attorney fees of the total recovery or lessen the statutory damages Littles would be entitled to receive under article 21.21. The complaints are denied. However, because the judgment contains a separate error concerning the calculation of prejudgment interest as explained below, the amount awarded for attorney fees is modified.

## C. Prejudgment Interest

In Points 17, 18, and 19, Benefit Trust addresses the trial court's computation of prejudgment interest. The judgment shows that the court granted Littles a prejudgment interest award of $84,518.20, which was based on his actual damages of $250,308.26. The interest was compounded daily from September 10, 1988 to the date of judgment,

August 9, 1991. Thereafter, the actual damages and prejudgment interest were trebled under the Insurance Code.

In Point 17, Benefit Trust first asserts that the trebling of prejudgment interest violates article 21.21, which merely provides for the addition of "two times the amount of actual damages" to the plaintiff's damages in the event of a knowing violation of the Insurance Code. TEX.INS.CODE ANN. art. 21.21, § 16(b)(1) (Vernon Supp.1993). Benefit Trust principally relies on the case of *Vail v. Texas Farm Bureau Mutual Insurance Co.,* 754 S.W.2d 129 (Tex.1988), in which the trial court rendered a judgment for the plaintiffs, then trebled their damages as a statutory penalty under article 21.21, and finally imposed prejudgment interest on the trebled amount. *Id.* at 130. The supreme court held that the trial court was warranted in awarding treble damages to the plaintiffs, yet stated, "We do hold, however, that the court improperly awarded prejudgment interest on the trebled amount. Prejudgment interest may not be awarded on punitive damages." *Id.* at 137.

Acknowledging the holding in *Vail,* Littles counters by citing *Celtic Life Insurance Co. v. Coats,* 831 S.W.2d 592 (Tex.App.—Austin 1992, writ granted), and *Paramore v. Nehring,* 792 S.W.2d 210 (Tex.App.—Austin 1990, no writ). In *Paramore,* the court of appeals, holding that prejudgment interest is an element of damages, approved the trebling of prejudgment interest in a Deceptive Trade Practices Act case. 792 S.W.2d at 212. In *Celtic Life Insurance Co.,* the court of appeals similarly approved of the trebling of prejudgment interest in an Insurance Code case under a formula used by the trial court in this case. 831 S.W.2d at 599. The court of appeals, holding that prejudgment interest is an element of damages, found no conflict between *Celtic Life Insurance Co.* and *Vail. Id.* at 598–99.

Although we find the arguments of our sister court well-reasoned, we cannot ignore the supreme court's unequivocal language of forbidding the award of prejudgment interest on punitive damages. The punitive damages in *Vail* were the mandatory treble damages required by article 21.21 for a knowing viola-tion of the Insurance Code. TEX.INS.CODE ANN. art. 21.21, § 16(b)(1) (Vernon Supp. 1993); *see also Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 9 (Tex.1991) (the treble damages provision of article 21.21 is punitive in nature). After concluding that prejudgment interest could not be trebled, the supreme court ruled that the plaintiffs should recover "treble the amount of [their insurance] policy, prejudgment interest on the amount of the policy only, and attorney's fees." *Vail,* 754 S.W.2d at 137. It is noteworthy that the supreme court did not reform the judgment to add interest to the unpaid portion of the plaintiffs' policy and then treble that sum. To do so would have yielded the same result forbidden by the supreme court when it said prejudgment interest could not be awarded on punitive damages.

We confronted a similar problem in *Southern Life & Health Insurance Co. v. Alfaro,* No. 4–91–470–CV, 1993 WL 49785 (Tex.App.—San Antonio Feb. 26, 1993, n.w.h.). In light of the supreme court's opinion in *Vail,* we held that prejudgment interest could not be added to the total amount of actual damages and then trebled. *Id.,* slip op. at 17. The purpose of awarding prejudgment interest is to compensate the injured plaintiff for lost use of money due as damages between the accrual of the claim and the judgment. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex.1985). That objective is achieved when prejudgment interest is added to the amount of actual damages before they are trebled. Thereafter, the measure of actual damages, without including prejudgment interest, is trebled in accordance with article 21.21 to punish the defendant for a knowing violation of the Insurance Code. TEX.INS.CODE ANN. art. 21.21, § 16(b)(1) (Vernon Supp.1993). The point is sustained, and the judgment award is modified pursuant to this analysis.

In Point 18, Benefit Trust insists that the trial court improperly set the date from which prejudgment interest should accrue. The judgment set the initial date for compounding interest at September 10, 1988, which was chosen under the equitable rule

that interest begins to accrue six months after the occurrence of the incident giving rise to damages. *Cavnar*, 696 S.W.2d at 555.

Benefit contends that the accrual date was improperly set because Littles would not have been operated on for the scarring on his lip until the end of 1988 and for the tightness in his neck until March 1989. It additionally argues that interest should not accrue until damages are actually sustained and that the court therefore erred in setting the accrual date beforehand at September 10, 1988.

However, the key language from *Cavnar* is that "interest shall begin to accrue ... from a date six months after *the occurrence of the incident giving rise to the cause of action." Id.* (emphasis added). The supreme court recognized that requiring a plaintiff to determine precisely when each element of his damage award was incurred would be an onerous burden for both the plaintiff and the court. *Id.* Hence it laid down this rule which it deemed to be the simplest method of calculating prejudgment interest.

Accordingly, we do not believe that Littles here had to precisely establish when each element of his damages was incurred. Littles proved at trial that Benefit Trust referred his claims over to "large case management" on March 10, 1988 as the total claims approached the $50,000 mark, the point by which Benefit Trust would be personally liable for claims under the excess risk insurance policy with the City of Victoria. This transfer also began the long delay in the settlement of the medical claims that eventually led to Littles' damages. Thus, March 10, 1988 was the date of "the occurrence of the incident giving rise to the cause of action," *Id.* at 555, and six months thereafter was September 10, 1988. The point is denied.

■ In Point 19, Benefit Trust complains about the fact prejudgment interest was compounded daily. It argues that under article 5069–1.05 of the Texas Revised Civil Statutes, prejudgment interest must be compounded annually. However, we note that the statute cited by Benefit Trust only applies to cases involving wrongful death, personal injury, and property damage. Tex. Rev.Civ.Stat.Ann. art. 5069–1.05, § 6(a) &

(g) (Vernon Supp.1993). Therefore, the statute is not applicable to the present case involving a statutory cause of action, and the court did not err in entering a rate of prejudgment interest that was compounded daily. The point is denied.

## V. CITY OF VICTORIA'S DAMAGES

### A. Actual Damages

In Point 13 to 16, Benefit Trust raises several complaints about the trial court's award of actual damages. The jury question pertaining to these points reads as follows:

#### Question No. 7

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the City of Victoria for its damages?

Do not include in your answer any amount that you find the City of Victoria could have avoided by the exercise of reasonable care.

Do not consider any payment made by any party since September 8, 1989, in figuring these damages.

ANSWER $35,000

■ In Point 13, Benefit Trust claims there is no evidence or insufficient evidence to support an award of actual damages in excess of $2,480. Benefit asserts that the only evidence offered at trial with respect to the City's damages was the labor and incidental costs incurred by the City in investigating the nonpayment of Littles' medical claims, which amounted to approximately $2,480.

However, a review of the record discloses the following. Teresa Special, the city attorney for Victoria, estimated during testimony that the City spent $2,480 to investigate the problem with Littles' medical claims. She further testified that the City suffered embarrassment due to the publicity surrounding the mishandling of the claims for Littles' medical treatment. Also, she testified that she knew of at least one person who was planning to leave the City because of employee concerns over the City's health insurance

program. Leslie Littles, meanwhile, testified that the City's employees held a different attitude toward Benefit Trust, which was an agent of the City at the time of this incident, as a result of how it handled Littles' claims. Furthermore, evidence was introduced that the City of Victoria was subjected to a lawsuit filed by Burn Care because of Benefit Trust's failure to pay for most of Littles' medical treatment.

Benefit Trust raises complaints about some of the evidence. However, the jury's answer of $35,000 was not attributable to any item of evidence particularly, nor do we have any way of ascertaining what evidence the jury considered in reaching its verdict. Applying the appropriate standards, we conclude there is sufficient evidence to support the jury's finding. *Stafford,* 726 S.W.2d at 16. Moreover, assessing all the evidence adduced at trial, we cannot say that the jury's verdict is against the great weight and preponderance of the evidence. *Pool,* 715 S.W.2d at 635. The point is denied.

■ In Point 15, Benefit Trust argues that the trial court erred "by considering the City's payment of the balance of Burn Care's bill as an element of the City's actual damages." Benefit Trust refers to the fact the City of Victoria paid Burn Care $25,048.65. Benefit points out that under the self-funded health insurance program, the City was liable for this balance, regardless of whether it paid it directly or whether Benefit Trust paid it from an account maintained by the City. Thus, the trial court allegedly erred in rendering a judgment that took this payment into account.

■ Upon reviewing the record, we find that the trial court's judgment award of $35,-000 was actually based on the jury's answer to Question No. 7. The instructions to Question No. 7 forbade the jury from considering any payments made by any party after September 8, 1989. The City made the $25,-048.65 payment on May 21, 1991. Unless Benefit Trust can show the jury violated the instruction by improperly giving weight to this evidence, we must presume the City's payment was not even considered. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 167 (Tex.1982). Since Bene-

fit Trust has not met this burden, the point is denied.

In Point 14, Benefit Trust contends that the trial court erred in instructing the jury not to consider payments made after September 8, 1988 because it allowed the City's payment to Burn Care to become an element of the City's actual damages. This argument is self-contradictory. The instruction asked the jury not to consider payments made after September 8, 1988, which was apparently beneficial to Benefit Trust's defense. Had the instruction been missing from the charge, Benefit no doubt would have then complained about its omission. The point is denied.

■ In Point 16, Benefit Trust complains about the trial court's application of a credit to the City's actual damage award. The judgment reflects that the court added actual damages and prejudgment interest together and then trebled the sum to find damages of $140,453.91. Then the trial court credited Benefit Trust for $23,686.60, recognizing the amount Benefit directly paid to the City under the excess risk insurance policy for Littles' medical costs over $50,000. Benefit Trust contends this credit was applied because the trial court treated the City's payment of $25,048.65 as an element of the City's damages. Accordingly, Benefit insists that the credit should be applied before damages were trebled, not afterward.

■ First, we note Benefit Trust cites no authority for support of its proposition in violation of Texas Rule of Appellate Procedure 74(f), hence preserving nothing for review. *Essex Crane Rental Corp. v. Striland Constr. Co.,* 753 S.W.2d 751, 756 (Tex.App.— Dallas 1988, writ denied). Moreover, the supreme court has held that any credit a defendant is entitled to must be applied after the damages are trebled under the mandatory penalty provisions of article 21.21 of the Insurance Code. *Stewart Title Guar. Co.,* 822 S.W.2d at 9 (discussing the context of credits for settlements made by other joint tortfeasors). Finally, we cannot say that the City's payment of $25,048.65 formed a part of the City damages, hence prompting the trial court to apply the excess risk insurance payment as a credit. Because Question No. 7

prohibited the jury from considering payments made after September 8, 1988, we must assume the payment in issue was not considered by the jury. *Turner, Collie & Braden,* 642 S.W.2d at 167. The point is denied.

### B. Prejudgment Interest

In Points 17, 18, and 19, Benefit Trust also complains about the trial court's computation of prejudgment interest as applied to the City's damages. Most of our discussion of prejudgment interest above also applies to the City's damages. In Point 17, Benefit Trust criticizes the trebling of the prejudgment interest award. As we said before, prejudgment interest cannot be trebled under article 21.21, and thus we sustain this point of error. The judgment award must be modified accordingly.

In Point 18, Benefit Trust argues that the accrual date for prejudgment interest should not start until December of 1989 when the City first became a party to this lawsuit. However, applying the rule from *Cavnar v. Quality Control Parking, Inc.,* we agree that Benefit Trust's transfer of the bills over to "large case management" marked the point sparking the problems of this lawsuit, and thus the trial court properly set the accrual date six months thereafter. *See* 696 S.W.2d at 555. It is noteworthy that Littles and Benefit Trust, previously an agent of the City, were already embroiled in this lawsuit long before the City was sued, which possibly affected the confidence in the City's health insurance program by the City's employees. Accordingly, this point is also overruled. In Point 19, Benefit Trust disputes the compounding of prejudgment interest on a daily basis. Based on our discussion of Littles' damages above, this point is likewise overruled.

### VI. CITY OF VICTORIA'S CROSS-CLAIM AGAINST BENEFIT TRUST

The City of Victoria raises several points of error related to its cross-claim against Benefit Trust, which focus on the trial court's refusal to allow the City to increase its prayer for exemplary damages.

The record indicates that the City raised several allegations of tortious conduct against Benefit Trust in its pleadings, generally asserting that Benefit Trust violated its duty of good faith and fair dealing with the City. Prior to trial, the City amended its pleadings to specifically request $10,000 in exemplary damages. After the close of evidence, the City filed a motion for leave to amend its pleadings, which sought in part to increase its exemplary damages to $1,000,000. This part of the motion was denied. Meanwhile, the jury found in its verdict that the City of Victoria was entitled to receive $800,000 in exemplary damages from Benefit Trust. The City attempted to file a post-trial amendment of its cross-claim to increase exemplary damages. After an evidentiary hearing, the trial court concluded the prayer could be increased to $15,000 only. Because the award of $15,000 was lower than the mandatory penalty award under article 21.21, the court permitted the City to elect the higher damages under the Insurance Code. *See Lawyers Sur. Corp. v. Royal Chevrolet, Inc.,* 847 S.W.2d 624, 629 (Tex.App.—Texarkana 1993, writ denied).

The principal case governing a trial court's discretion in allowing a party to make a post-verdict trial amendment is *Greenhalgh v. Service Lloyds Insurance Co.,* 787 S.W.2d 938 (Tex.1990). The supreme court held:

> Under [Texas Rules of Civil Procedure] 63 and 66 a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice . . ., or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. . . . The burden of showing prejudice or surprise rests on the party resisting the amendment.

*Id.* at 939. *See also Coble Wall Trust Co. v. Palmer,* 848 S.W.2d 696, 706 (Tex.App.—San Antonio 1991), *rev'd on other grounds,* 851 S.W.2d 178 (Tex.1992); *Welex v. Broom,* 806 S.W.2d 855, 869 (Tex.App.—San Antonio 1991), *vacated on other grounds,* 816 S.W.2d 340 (Tex.1991).

■ In Point 1, the City contends the trial court erred in denying its motion for leave to file its fourth amended cross-claim, which included a prayer for an increase in exemplary damages. The City argues that the trial court abused its discretion in denying the motion because Benefit Trust made absolutely no showing of surprise or prejudice.

According to the record, the City orally submitted its motion for leave to file a trial amendment after the close of the evidence. Meanwhile, the jury was scheduled to be called back into court after lunch to begin its deliberations. In response to the motion, the judge said, "I understand the Rule says that trial amendments are to be liberally granted.... I've given you a cap [on exemplary damages] and [will] not allow you to amend it on the trial level. The verdict will be followed." The court denied the City's motion for leave to amend at that particular time. Apparently as a result of this ruling, Benefit Trust did not make a showing of surprise or prejudice.

■ We acknowledge that the supreme court's analysis in *Greenhalgh* applied in part to Rule 63, which permits trial amendments by leave of court seven days before trial and anytime thereafter. We also note that a court has limited discretion in denying such amendments. Here, however, what evidently occurred was that the court did not absolutely refuse the City's motion, but merely delayed consideration of it until after trial. This leaves open the question of whether a party has an absolute right to have his unopposed motion for an amendment heard during the trial. Under the facts of this case, we think not. The case of *Greenhalgh* does not speak of when a ruling must be made once requested by the party seeking the amendment. For the court to rule on the motion in this case, it would have had to delay the trial and conduct an evidentiary hearing, which it eventually did in the post-verdict stage. Considering the trial court's wide discretion in managing its docket, *see Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex.1982), and in light of the fact the City cited no authority indicating that a party has an absolute right to a ruling on such a motion during trial, we find no abuse of discretion here. The point is denied.

On rehearing, the City contends this court has fashioned a new rule by allowing the trial court to put off arguments for a motion for trial amendment lodged during the midst of trial until the post-verdict stage. We do not carve any new exceptions to the Rules of Civil Procedure by our analysis, nor do we necessarily agree that the trial court's action here would be acceptable in every instance. Our analysis is rooted solely in the abuse of discretion standard of review, and we conclude that the City failed under these facts to make a showing that the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ In Point 2, the City contends that the trial court erred in denying its motion for leave to file its fifth amended cross-claim, which included a prayer for an increase of exemplary damages to $800,000 in conformity with the jury's verdict. Benefit Trust objected to the motion, and an evidentiary hearing was held on July 23, 1991. The trial court concluded that the City was entitled to increase its prayer for exemplary damages to $15,000 only.

According to the holding in *Greenhalgh*, Benefit Trust had to defeat the motion by presenting evidence of surprise or prejudice. 787 S.W.2d at 939. At the hearing, Benefit Trust presented three witnesses—the City's trial attorney, Benefit Trust's trial attorney, and Benefit Trust's general counsel. According to the testimony, Benefit Trust based its strategy on the fact the City requested only $10,000 in exemplary damages. Prior to trial and before Benefit Trust paid the City $23,686.06 under the excess risk insurance policy, the City made a settlement offer of approximately $40,000. After the City paid the insurance payment, the City made an offer of $20,000 the week prior to trial. According to the evidence, Benefit Trust rejected these offers and elected for a jury to determine liability based on the pleadings that asked for only $10,000 in exemplary damages.

Benefit Trust's trial attorney testified, "[W]e felt that the risk, basically the worst case scenario would be $50,000 exposure [of actual and exemplary damages] and felt there was no reason at that point to spend the money, paying off the City, essentially, and we chose not to settle." He also testified that had the City demanded much more in exemplary damages in its pleadings, then Benefit would have changed its trial strategy significantly. He said Benefit Trust would have deposed many more people, such as the city manager, some of the city council members, and several of the city employees. Also, it might have accepted early offers of settlement. Finally, it would have aggressively opposed the City's evidence at trial, which it contends it really did not do in this case.

This testimony was more or less reiterated by Benefit's corporate secretary and general counsel. The general counsel underscored the fact Benefit would have promptly settled the case had the City sought exemplary damages of $800,000. He also said that the motion to amend the pleadings and the jury's verdict "stunned" him because it was an 8000 percent increase over the City's prior demand for exemplary damages.

After reviewing the evidence presented at the hearing, we find the trial court did not abuse its discretion in denying the motion since the request for additional exemplary damages clearly took Benefit Trust by surprise. Alternatively, had the court allowed the City to increase its prayer for exemplary damages by 8000 percent, Benefit Trust no doubt would have seen this as a "reshaping" of the City's cause of action, in which case the trial court has discretion in refusing the amendment. *See Greenhalgh,* 787 S.W.2d at 940. The point is denied. We find it unnecessary to address the other points of error raised by the City and the cross-points asserted by Benefit Trust.

## VII. CONCLUSION

Based on our holding above, we conclude that the judgment must be modified because the trial court improperly trebled the prejudgment interest awards. Because we are modifying the total damages, the court's award of attorney fees to Littles, which were based on his total recovery, must likewise be modified. Consequently, Littles' damage award, prejudgment interest award, and statutory damages should reflect an amount of $835,443.28. Attorney fees based on the recovery should reflect an amount of $556,962.19. Hence, Littles should recover from Benefit Trust $1,392,405.47. The City's damage award, prejudgment interest, and statutory damages meanwhile should reflect an amount of $93,131.97 after applying a credit of $23,686.60 for Benefit Trust's payment under the excess risk insurance policy.

Otherwise, the judgment is affirmed in all other respects.